**COMMONWEALTH of Pennsylvania**

v.

**Floyd MARSHALL, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 1995.
Decided July 27, 1995.

**816**

Howard H. Brown, for appellant.

Jerome T. Foerster, Deputy Atty. Gen., for appellee.

Before DOYLE and NEWMAN, JJ., and DELLA PORTA, Senior Judge.

DOYLE, Judge.

Floyd Marshall (Claimant) appeals an order of the Court of Common Pleas of Chester County which denied his motion for the return of $3,400 in U.S. currency which was seized and forfeited to the Commonwealth.

The trial court made the following findings of fact. On August 10, 1993, Claimant was a passenger in a vehicle which was stopped for speeding. Pennsylvania State Police Trooper Ryan Hutchinson observed the vehicle pass his position and initially observed only two occupants in the car. Upon approaching the vehicle, however, he noticed Claimant lying on the back seat, apparently asleep. As a result of the Trooper's inquiries, all three passengers were removed from the car. At this time Trooper Hutchinson noted that the lower portion of the back seat was pulled away from the upright portion of the seat. In the space between the two portions of the seat he observed packets of currency.

Trooper Hutchinson arrested the passengers in the vehicle, including Claimant, pursuant to outstanding warrants for their arrests. In the ensuing inventory search of the car, a total of $3,400 that was packaged in hundred dollar packets, folded in a manner consistent with the manner in which those involved in drug activity bundle their money, was recovered.[1]

On August 11, 1993, police conducted a test with a specially trained dog. The money was placed in a closed desk drawer in the police station. The dog went immediately to that drawer and tried to pull it open. Based on the dog's strong reaction,[2] Trooper Timothy

1. At the hearing, Trooper Hutchinson testified as follows:

> Q Did they ever provide you training pursuant to the way the money is packaged or that denominations that it is pertaining to drug distribution?
> A Yes.... The training, what they state, is some—a lot of times they will keep them in ... $100.00 increments with the dollar bills one way, the next dollar bill the opposite way, the next dollar bill the other way. This is for easy counting for selling drugs and easy—be able to give money very easily.
> Q Now pursuant to the money you seized that day, on August 10th, from the vehicle, what if any—what if any conclusions did you make about the money when you witnessed how it was packaged?

> A The money was packaged the way I just explained. The money was inside and out. They were in wads of $100.00 increments, all twenties or possibly all tens, or ... four twenties, four fives, just everything that equalled up to that $100.00 increment.
> Notes of Testimony at 33.

2. Trooper Markely in his testimony described the dog's reaction:

> Okay. In my—in my opinion ... and from my experience of working five years with the dogs ... the odor was strong. The dog did his entire scan without command and he went over to the drawer [where the money was hidden] and hit on the drawer immediately.... And it was a strong alert.... I started the dog on the west side and he went right around over to the east side right to the drawer.

D. Markely, a certified drug detective expert, testified that the money had recently been in close proximity with controlled substances which the dog was trained to detect.

Claimant filed a motion for return of property pursuant to Pa.R.Crim.P. 324. A hearing was held on May 2, 1994. When questioned about the source of the cash, Claimant alleged that $3,000 of the money was an advance paid to him in his capacity as a caterer by a relative or friend. He also testified that he was on his way to buy food for the affair. The relative was unavailable to testify at the hearing because he resided in North Carolina, and the friend was not called as a witness. The driver of the vehicle claimed that $400 of the money was his.

The trial court found Claimant's testimony to be not credible and by an order dated May 11, 1994, denied his motion for the return of the currency. This appeal followed.

Claimant argues that (1) since the search of the vehicle was a warrantless search, the currency could not properly be seized, and (2) there was an insufficient nexus between the currency and illegal activity.

### The Search of the Vehicle

Claimant argues that the search of the car was improper and therefore the Commonwealth can not properly seize the currency.

Section 6801(b) of the Judicial Code (commonly referred to as the Forfeiture Act), 42 Pa.C.S. § 6801(b), provides that

Seizure without process may be made if:

(1) the seizure is incident to an arrest or a search under a search warrant or inspection under an administrative inspection warrant;

(2) the property subject to seizure has been the subject of a prior judgment in favor of the Commonwealth in a criminal injunction or forfeiture proceeding under this chapter;

(3) there is probable cause to believe that the property is dangerous to health or safety; or

(4) there is probable cause to believe that the property has been used or is intended to be used in violation of The Controlled Substance, Drug, Device and Cosmetic Act [, 35 P.S. § 780–101 to –144].

■■■ We find that there was nothing improper about Trooper Hutchinson's search of the car and seizure of the currency. Clearly, pursuant to Section 6801(b)(1), a seizure may be made incident to arrest. Moreover, the United States Supreme Court has held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) (footnotes omitted).

Trooper Hutchinson testified that there was an outstanding warrant for the arrest of the driver and front seat passenger of the vehicle. He also discovered that there was an outstanding warrant for Claimant's arrest. Upon discovering this, he asked Claimant to step out of the car and placed Claimant under arrest.[3] At this time the Trooper noticed that the seat cushions had pulled apart and the money was concealed below the seat. Accordingly, Trooper Hutchinson performed an inventory search of the passenger compartment of the vehicle, placed the money in an evidence bag, and took all three men to the police station.

Q You indicated when you arrested—you did place Mr. Marshall under arrest; is that correct?
A That's correct.

Notes of Testimony at 37. Although Claimant was later released because of a technical problem with the warrant, he was nevertheless arrested at the scene pursuant to what Trooper Hutchinson believed was a valid warrant.

---

Notes of Testimony at 55. Trooper Markely explained that the dog "alerts" by scratching and biting at the location. Trooper Markely and the dog as a team are tested monthly and are accurate to at least 95%.

3. Claimant states in his brief that none of the occupants of the vehicle were arrested. This contention is belied by the facts in the record. We would direct counsel's attention to his cross examination of Trooper Hutchinson, wherein he asked:

■ Additionally, we hold that the Trooper had probable cause to believe that the money was intended for illegal activity in violation of the Drug Act, and therefore the seizure was also proper under Section 6801(b)(4). First, the driver initially gave a false identity when Trooper Hutchinson asked him for his name. Second, Trooper Hutchinson testified that the three men each gave different stories about where the money came from and where they were going, and third, the currency was bundled consistent with the manner in which drug dealers have been known to bundle money. Therefore, there was nothing improper about Trooper Hutchinson's search of the vehicle. *See Commonwealth v. Nineteen Hundred and Twenty Dollars U.S. Currency*, 149 Pa.Commonwealth Ct. 132, 612 A.2d 614 (1992).

### Forfeiture of the Currency

Claimant contends that the Commonwealth failed to sustain its burden of proving that the currency was forfeitable under the Forfeiture Act. Claimant argues that since the money was not in close proximity with controlled substances and Claimant "in the instant case was not arrested,"[4] the Commonwealth failed to establish the necessary nexus between the currency and illegal activity.

■ In order to sustain its burden of proof in a forfeiture proceeding, the Commonwealth must establish by a preponderance of the evidence:

1) that the money was furnished or intended to be furnished in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act (Controlled Substance Act) or the proceeds traceable to such and exchange or 2) that the money was used or intended to be used to facilitate any violation of the Controlled Substance Act. 42 Pa.C.S. § 6801(a)(6)(i)(A)(B). In so showing, the Commonwealth must establish a nexus between the unlawful activity and the property subject to forfeiture.

*Commonwealth v. $32,950.00 U.S. Currency*, 160 Pa.Commonwealth Ct. 58, 61, 634 A.2d 697, 697 (1993), *petition for allowance of appeal denied*, 538 Pa. 637, 647 A.2d 512 (1994) (footnotes omitted).

■ This Court has recently held that there is no requirement that drugs be present in order to establish a connection between currency and illegal activity; such a connection may be established by circumstantial evidence. *Commonwealth v. Nine Thousand Three Hundred Ten Dollars U.S. Currency*, 162 Pa.Commonwealth Ct. 315, 638 A.2d 480 (1994).

■ The trial court determined that there was adequate circumstantial evidence presented to infer that the currency was connected to illegal drug activity. The trial court specifically found (1) Claimant's testimony concerning the source of the currency and what he intended to use it for was not credible; (2) Claimant was essentially unemployed for a year and a half before his arrest; (3) the occupants of the vehicle gave Trooper Hutchinson different and inconsistent stories[5] concerning the ownership of the money and what they were doing with it; and (4) the money was bundled the way drug dealers often bundle their money and was concealed under the seat. The trial court was also persuaded by the "sniff test" performed by Trooper Markely and his dog, and the dog's strong reaction to the odor of a controlled substance on the currency. The trial court as the finder of fact may draw any reasonable inference from the evidence, *Commonwealth v. Schill*, 164 Pa.Commonwealth Ct. 594, 643 A.2d 1143, *petition for allowance of appeal denied*, 539 Pa. 656, 651 A.2d 543 (1994), and, as the trial court is the sole arbiter of credibility, this Court will not reweigh such evidence. *See Commonwealth v. $16,208.38 U.S. Currency*, 160 Pa.Commonwealth Ct. 440, 635 A.2d 233 (1993), *petition for allowance of appeal denied*, 538 Pa. 634, 647 A.2d 509 (1994). Accordingly, we hold that the trial court did not err in finding that the Commonwealth had sustained its burden

---

4. Claimant's brief at 5.

5. The driver of the vehicle gave a false name when asked for his identification by Trooper

of proof.[6]

Affirmed.

### ORDER

NOW, July 27, 1995, the order of the Court of Common Pleas of Chester County in the above-captioned matter is hereby affirmed.

The decision in this case was reached before the expiration of the appointment of Senior Judge DELLA PORTA.

DELLA PORTA, Senior Judge, dissenting.

I respectfully dissent. The law, which is accurately quoted in the majority opinion, is clear that the Commonwealth has the burden to establish by a preponderance of the evidence:

1) that the money was furnished or intended to be furnished in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act (Controlled Substance Act) or the proceeds traceable to such an exchange or 2) that the money was used or intended to be used to facilitate any violation of the Controlled Substance Act. 42 Pa.C.S. § 6801(a)(6)(i)(A), (B). In so showing, the Commonwealth must establish a nexus between the unlawful activity and the property subject to forfeiture.[1]

The Court went on to say that the Commonwealth must first establish that "the money was subject to forfeiture under Section 6801(a) of the Act," before the burden shifts to the claimant to disprove the Com-

monwealth's evidence or establish other reasons to avoid forfeiture.[2]

In that case the Commonwealth established that claimant was conducting a methamphetamine drug operation. The police confiscated several thousand dollars worth of drugs and drug paraphernalia, and upon arrest and search of claimant, found the key to a safe-deposit box from which they recovered the $32,950.00 sought to be confiscated. Given this factual determination, our Court held that the trial court correctly found that the Commonwealth had met its burden of establishing the nexus between the illegal activity and the money it sought to forfeit.

Similarly, in the other case cited by the majority[3] the trial court found sufficient evidence, albeit circumstantial in nature, to determine that the Commonwealth had met its burden of proof to establish a nexus between illegal activities and the money in question. *See also Petition of Maglisco*, 341 Pa.Superior Ct. 525, 491 A.2d 1381 (1985) and the leading case of *Commonwealth v. Landy*, 240 Pa.Superior Ct. 458, 362 A.2d 999 (1976), which analyzes the historic development of the law of forfeitures.

In the case *sub judice*, the trial court erred in totally ignoring the requirement that the Commonwealth has the burden of proof, and in arriving at not more than a suspicion of possible illegal activity mostly from the evidence offered by the claimant rather than the Commonwealth. The sum total of the findings of fact in support of the corpus of the illegal activity consist of: (1) "I find it strange that a speeding vehicle comes to a sudden halt and the rear seat passenger [claimant] does not awaken".[4] (2) Within a

Hutchinson. Notes of Testimony 28–29.

**6.** In the body of his brief Claimant devoted a single declaratory sentence stating that the amount of the forfeiture was excessive. However, this argument was not presented in his "Statement of the Questions Involved" was not mentioned in the "Summary of Argument," and was not developed in the argument section of the brief. Accordingly, we decline to reach this issue. *See* Pa.R.A.P. 2111–40; *Park v. Chronister*, 151 Pa.Commonwealth Ct. 562, 617 A.2d 863 (1992), *petition for allowance of appeal denied*, 534 Pa. 654, 627 A.2d 731 (1993).

**1.** *Commonwealth v. $32,950.00 United States Currency*, 160 Pa.Commonwealth Ct. 58, 61, 634 A.2d 697, 698 (1993), *petition for allowance of appeal denied, sub nom Commonwealth v. Friel*, 538 Pa. 637, 647 A.2d 512 (1994) (footnotes omitted).

**2.** *Id.* at 61–62, 634 A.2d at 699.

**3.** *Commonwealth v. $9,310.00 United States Currency*, 162 Pa.Commonwealth Ct. 315, 638 A.2d 480 (1994).

**4.** All of these findings are from the trial court's opinion.

very short time thereafter, Claimant sat "in an upright position." (3) The seat bottom is in a pulled position from the back rest, "and $3,000.00 plus has conveniently fallen into the space thus created." (4) Money was noticed in that space when Claimant was removed from the seat. (5) The $3,400 recovered was packaged in hundred dollars packets, "folded in a manner consistent with the manner in which those involved in drug activity bundle their money." [The trooper's testimony was that the currency bills were sequentially arranged, one faced up and the next faced down. Incidentally, I am advised that some people do that with fresh bills to avoid their sticking together.] (6) "The money smells either of cocaine, marijuana or heroin, and does so strongly." [This was based on a test with a specially trained dog.]

The rest of the trial court's findings concerns the claimant's explanation of how he got the money and his failure to produce other witnesses to support his testimony which the court found to "ring[s] hollow, not true."

Giving the benefit of every doubt to the above findings of fact and all reasonable inferences that can be drawn therefrom, I still cannot find the existence of any illegal activity connected with the money in question. At best, there is a *possibility* that the money may have been, at some unknown time in the past, connected with some illegality. But, so can the money in my pocket or anyone else's pocket. Also, banks generally package money in $100 bundles. By coincidence or intentionally to avoid bills from sticking together, any perfectly innocent person could possess money similarly arranged as Claimant had. And, lastly, such perfectly innocent person has no way of determining in what contact the currency in his pocket or purse may have been before reaching him or her.

The Claimant here has an absolute right to put the Commonwealth to the proof of establishing by a preponderance of the evidence that the money seized has a nexus with unlawful activity on the part of Claimant. No matter how one adds the court's findings, it is clear to me that the trial court was in error in its determination that the burden of proof has been met. Therefore, I would reverse.