880 A.2d 523

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**$6,425.00 Seized from Richard ESQUILIN, Appellee.**

Supreme Court of Pennsylvania.

Argued April 11, 2005.

Decided Aug. 15, 2005.

546

Hugh J. Burns, Esq., Jonathan Michael Levy, Esq., Ronald Eisenberg, Esq., Philadelphia, for Commonwealth of Pennsylvania.

Anthony J. Petrone, Esq., Philadelphia, for Robert Esquilin.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice CASTILLE.

This appeal raises questions concerning the proper inferences available in a forfeiture case, as well as the proper standard for reviewing a trial court's forfeiture determination. The Commonwealth Court panel in this case overturned the trial court's determination that $6,425.00 in cash found on appellee Richard Esquilin [1] subsequent to his arrest for partic-

---

1. Although 42 Pa.C.S. § 6802(a) instructs that, in a proceeding for the forfeiture of property, "the Commonwealth shall be the plaintiff and the

ipating as the "money man" in illegal drug transactions was subject to forfeiture. In ordering the entire sum forfeited, the trial court found: (1) that a sufficient nexus existed between the money and the illegal drug transactions to deem the cash subject to forfeiture, and (2) that appellee failed to show that the money was lawfully acquired. The Commonwealth Court affirmed the forfeiture only as to $60.00, while reversing as to the remaining $6,365.00, finding that there was an insufficient nexus between the remaining portion of the money and drug dealing. For the reasons set forth below, we find that the trial court correctly determined that the entire amount of money should be forfeited. Accordingly, we reverse the order of the Commonwealth Court and reinstate the trial court's forfeiture order.

The facts surrounding this appeal are as follows. On June 18, 2000, at approximately 8:00 p.m., officers from the Philadelphia Police Narcotics Strike Force began surveillance in the West Kensington section of Philadelphia. Officer Spicer observed appellee standing on the sidewalk with Miguel Burgos, in front of 2810 North Lee Street.[2] At 8:10 p.m., Richard Negron approached the two men and, after a brief conversation, handed an unknown amount of money to Burgos. Burgos then reached into the front of his pants and pulled out small objects which he handed to Negron. At 8:25 p.m., an unknown Hispanic female approached the two men and also gave money to Burgos in exchange for small objects from the front of Burgos' pants. Burgos immediately handed this money to appellee. At 8:35 p.m., Ishmael Cruz walked up to Burgos and engaged in a brief conversation before giving money to Burgos in exchange for small objects that Burgos removed from the front of his pants. Burgos again handed the money to appellee.

Officers stopped Negron and Cruz after they had left the area, but were unable to locate the Hispanic female. An

property the defendant," we will refer to Esquilin as the appellee, for ease of discussion.

2. Burgos resided at 2810 North Lee Street and appellee resided across the street at 2809 North Lee Street.

officer stopped Negron while he was a passenger in a car, at which time Negron tossed from the car one clear zip-lock packet containing crack-cocaine. Officer Burgess stopped Cruz and recovered from him one clear zip-lock packet containing crack-cocaine. Officer Jones, acting on this information, then arrested appellee. In a search incident to the arrest, Officer Jones recovered $6,425.00 [3] in cash, comprising: forty-eight one hundred-dollar bills, two fifty-dollar bills, sixty-nine twenty-dollar bills, eight ten-dollar bills, eleven five-dollar bills, and ten one-dollar bills. Officer Twist arrested and searched Burgos, recovering three zip-lock packets of cocaine and $7.00 in cash. Appellee was charged with criminal conspiracy and possessing a controlled substance with intent to deliver, but the charges were ultimately dismissed pursuant to Pa.R.Crim.P. 600, for lack of a prompt trial.

In the meantime, the Commonwealth filed a petition for forfeiture of the $6,425.00 in cash seized from appellee. The trial court, per the Honorable Denis P. Cohen, held a hearing on the matter on June 13, 2002. No testimony was taken because the parties agreed to have the matter decided based solely on documentary evidence. That evidence included: a three-page police investigation report, dated June 22, 2000; five police property receipts, dated June 18, 2000; five chemistry laboratory reports, dated August 3, 2000; appellee's answers to interrogatories; bank account statements; and a copy of a cancelled check. After considering the evidence, the trial court ordered the entire $6,425.00 forfeited.

Appellee filed a notice of appeal to the Commonwealth Court, followed by a statement of matters complained of on appeal, pursuant to Pa.R.A.P.1925(b). In its Pa.R.A.P 1925(a) opinion, the trial court held that the police officers had probable cause to arrest and search appellee, whom they saw acting as the money man in three obvious drug transactions; therefore, the cash was properly seized incident to a lawful arrest. The trial court also found that the Commonwealth established

3. Transposing two numbers, the trial court found that the amount was $6,245.00; however, as the Commonwealth Court correctly noted, the undisputed evidence shows that the amount was actually $6,425.00.

that the $6,425.00 was used to facilitate violations, or represented the proceeds of violations, of The Controlled Substance, Drug, Device and Cosmetic Act ("Controlled Substance Act").[4] The trial court concluded that the Commonwealth established a nexus between the money seized and the illegal drug transactions police had observed, and concluded that the documents offered into evidence by appellee did not establish that the money was lawfully acquired. The trial court also noted that appellee had failed to offer any explanation for his activities on June 18, 2000, to counter the evidence that he was the money man in an illegal drug operation.

On appeal, a panel of the Commonwealth Court affirmed in part and reversed in part in a memorandum opinion, authored by the Honorable Rochelle S. Friedman, filed on August 6, 2003. The panel affirmed the trial court's finding that the officers had probable cause to arrest and search appellee, but reversed the finding that all of the $6,425.00 in cash was used to facilitate violations, or represented the proceeds of violations, of the Controlled Substance Act. The panel believed that it was reasonable for the trial court to conclude that, as witnessed by the officers, Burgos had handed money to appellee from the drug sales to Negron, Cruz and the unknown Hispanic female, each transaction having an estimated value of $20.00. Thus, the panel found sufficient support for the trial court's forfeiture order as to $60.00 of the money found on appellee. As for the rest of the money, however, the panel believed there was no evidence to support the conclusion that it was connected with illegal drug dealing. In light of its conclusion that no nexus was shown between the remainder of the money and a violation of the Controlled Substance Act, the panel did not pass upon whether appellee had offered an innocent explanation for his possession of the money. Accordingly, the panel affirmed the trial court's grant of the forfeiture petition with respect to $60.00, but reversed with respect to the remaining $6,365.00.

4. Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§ 780–101–780–144.

On further appeal to this Court, the Commonwealth now argues that the Commonwealth Court improperly reweighed the evidence and refused to accord it the benefit of all reasonable inferences, notwithstanding that it was the prevailing party at trial. The Commonwealth submits that, when the evidence is properly viewed, it clearly proved by a preponderance of the evidence the nexus between the money and illegal drugs: appellee stood with Burgos, conducting street sales of illegal drugs; at least a portion of the money seized had directly facilitated the very drug transactions police had witnessed; and the fact-finder found appellee's assertions of a legitimate source for the funds to be implausible. Given the totality of the circumstances, the Commonwealth submits that the trial court correctly inferred that all of the money possessed by appellee, who was observed participating in illegal drug sales, was forfeitable. The Commonwealth submits that, in overturning the trial court's assessment of the evidence, the panel overstepped its limited authority as a reviewing court and substituted its own judgment.

The Commonwealth further argues that appellee's failure to provide an innocent explanation for his activities on the night of June 18, 2000, corroborated its evidence that the money was tied to illegal drug dealing. In the Commonwealth's view, the absence of any innocent explanation logically suggests that the unusually large amount of cash that appellee had in his possession while selling cocaine on the street was related to that very enterprise, *i.e.*, it was either "proceeds from illegal street transactions, or the recent sale of a substantial amount of drugs, or intended to be used to purchase a substantial amount of drugs." Brief for Appellant, 15. The Commonwealth argues that appellee's failure to provide a credible explanation of a non-drug source for the large sum of cash likewise supports the trial court's forfeiture finding. The Commonwealth notes that appellee's proffered explanation— that the cash had been withdrawn from a bank account owned by Madeline Soberal, the mother of his children, almost three weeks prior to his arrest, and that the money was to be used for repairs to a house he had recently purchased—was reject-

ed as implausible by the trial judge and it argues that that finding is not subject to reweighing on appeal.

The Commonwealth argues that the trial court's forfeiture finding here was consistent with this Court's decisions in *Commonwealth v. Fontanez,* 559 Pa. 92, 739 A.2d 152 (1999), and *Commonwealth v. Marshall,* 548 Pa. 495, 698 A.2d 576 (1997), cases in which this Court overturned forfeiture orders. The Commonwealth distinguishes *Fontanez* and *Marshall* because there was no evidence of the claimant's participation in illegal drug sales in those cases, a crucial evidentiary void which led to this Court's conclusions that a claimant's mere possession of a significant amount of cash did not prove, even indirectly, a violation of the Controlled Substance Act. In this case, the Commonwealth notes, it proved that appellee conspired with Burgos to conduct multiple sales of cocaine and retained the money from those sales, facts which provide the clear drug nexus which was deemed lacking in *Fontanez* and *Marshall.*

The Commonwealth also argues that the Commonwealth Court panel's approach to forfeiture review will now require the Commonwealth to specifically trace the source of every dollar found on drug dealers observed in the act of selling drugs. The Commonwealth argues that the forfeiture statute should not be construed as requiring such heightened proof. The Commonwealth argues that once it shows a nexus between the money and violations of the Controlled Substance Act, the burden properly shifts to the forfeiture claimant to persuade the fact-finder that some or all of the money came from a legitimate source.[5]

Appellee responds that he needed only to allege that the seized money belonged to him, which he did, at which point the Commonwealth was obliged to prove by a preponderance of the evidence that the money was subject to forfeiture.

5. The Commonwealth argues in the alternative that, where an intermediate appellate court has reversed a fact-finder's determination based on the sufficiency of the evidence, it has, in effect, entered a judgment not withstanding the verdict ("JNOV") and its ruling should be reviewed based on the standards for JNOV. Given our resolution, we need not address this alternate procedural argument.

Appellant submits that the Commonwealth failed to prove that **any** of the money seized was proceeds from drug activity involving appellee, as opposed to Burgos. Appellee portrays himself as a man merely standing across from his house at around 8:00 p.m. with his neighbor, who then became an innocent recipient of $60.00 in drug proceeds from that neighbor, while unaware of the fact that the neighbor was dealing drugs. Appellee argues that this was "hardly enough" evidence to link him to the drug sales and proceeds.

Even assuming the $60.00 traceable to the observed drug deals was properly deemed forfeitable, appellee argues that there was insufficient evidence to link the balance of the cash found on him to drug activity. Appellee notes that the forfeiture statute is to be strictly construed. Appellee posits that the Commonwealth cannot rely upon the presumption that money found in close proximity to drugs constitutes proceeds from the sale of drugs because no drugs were found on or near him. In addition, appellee argues that the fact that $6,365.00 in cash was found along with the $60.00 in cash directly traceable to the illegal drug sales was not enough to make the larger sum forfeitable. Appellee argues that property is not forfeitable just because it is possessed by a drug offender, nor is property acquired prior to the time of an illegal action subject to forfeiture. Appellee states that, because the Commonwealth did not sustain its initial burden to prove a connection between his cash and the drug activity, the burden never shifted to him to establish a defense to avoid forfeiture.

Appellee also argues that the trial court erred in drawing an adverse inference from his decision to answer "no comment" to an interrogatory requesting his version of the events surrounding the seizure of his money. Appellee argues that he cooperated by answering other interrogatories posed by the Commonwealth and by producing documents which purportedly proved the innocent source of the money. In conclusion, appellee submits that the Commonwealth Court properly found that the Commonwealth failed to carry its burden to show a substantial nexus between the $6,365.00 and any other

drug dealing, leading to the conclusion that the money was not subject to forfeiture.

This Court granted discretionary review out of a concern that the Commonwealth Court improperly applied a heightened standard for reviewing the trial court's forfeiture decision. Generally, in an appeal from a forfeiture proceeding, the appellate court's review is limited to determining whether the findings of fact made by the trial court are supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law. *Commonwealth v. Real Property and Improvements Commonly Known as 5444 Spruce Street*, 574 Pa. 423, 832 A.2d 396, 398 (2003); *Marshall*, 698 A.2d at 578 n. 2; *see also Commonwealth v. $11,600.00 Cash, U.S. Currency*, 858 A.2d 160, 163 n. 3 (Pa.Cmwlth.2004). With respect to this Court's review of the Commonwealth Court's discharge of its reviewing function, our standard is plenary and non-deferential.

The Controlled Substances Forfeitures Act ("Forfeiture Act"), 42 Pa.C.S. § 6801 *et seq.*, permits the forfeiture of money exchanged for drugs or used or intended to be used to facilitate any violation of the Controlled Substance Act, by providing as follows:

**Forfeitures generally.**—The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

\* \* \*

(6)(i) All of the following:

(A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act, and all proceeds traceable to such an exchange.

(B) Money ... used or intended to be used to facilitate any violation of [the Controlled Substance Act].

42 Pa.C.S. § 6801(a)(6)(i). The statute further provides that: "Such money and negotiable instruments found in close proximity to controlled substances possessed in violation of [the Controlled Substance Act] shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of [the Controlled Substance Act]." *Id.* § 6801(a)(6)(ii). *See Commonwealth v. $9,847.00 U.S. Currency,* 550 Pa. 192, 704 A.2d 612, 616 n. 7 (1997).

Thus, in forfeiture proceedings involving money, the Commonwealth bears the initial burden of proving that forfeiture was appropriate under either subsection (A) or (B). *Marshall,* 698 A.2d at 578. To meet its burden, the Commonwealth must establish, by a preponderance of the evidence, that a nexus exists between the money and a violation of the Controlled Substance Act.[6] *See id.; Commonwealth v. $16,208.38 U.S. Currency Seized From Holt,* 160 Pa.Cmwlth. 440, 635 A.2d 233, 238 (1993), *appeal denied,* 538 Pa. 634, 647 A.2d 509 (1994); *Commonwealth v. $32,950.00 U.S. Currency,* 160 Pa.Cmwlth. 58, 634 A.2d 697, 698 (1993), *appeal denied sub nom. Commonwealth v. Friel,* 538 Pa. 637, 647 A.2d 512 (1994). A preponderance of the evidence is tantamount to a "more likely than not" standard. *$11,600.00 Cash,* 858 A.2d at 164 (citing *$32,950.00 U.S. Currency,* 634 A.2d at 698 n. 9); *Commonwealth v. McJett,* 811 A.2d 104, 110 (Pa.Cmwlth. 2002). Moreover, the Commonwealth need not produce evidence directly linking seized property to illegal activity in order to establish the requisite nexus between seized property and unlawful activity. *$11,600.00 Cash,* 858 A.2d at 166 (citing *McJett,* 811 A.2d at 110). Although illegal drugs are often present at the time of seizure, there is no requirement that such drugs be present; instead, circumstantial evidence may suffice to establish a party's involvement in drug activity. *McJett,* 811 A.2d at 110 (citing *Commonwealth v. Nine Thousand Three Hundred Ten Dollars U.S.C.,* 162 Pa.Cmwlth. 315,

---

6. Although appellee is correct that forfeiture statutes are subject to strict construction, *Commonwealth v. $2,523.48 U.S. Currency,* 538 Pa. 551, 649 A.2d 658, 661 (1994), it remains that the Commonwealth's initial burden is to demonstrate only by a preponderance of the evidence that the money is forfeitable.

638 A.2d 480, 484 (1994)). Furthermore, for property to be deemed forfeitable, neither a criminal prosecution nor a conviction is required. *$11,600.00 Cash,* 858 A.2d at 167 (citing *Commonwealth v. 502–504 Gordon Street,* 147 Pa.Cmwlth. 330, 607 A.2d 839 (1992), *affirmed,* 535 Pa. 515, 636 A.2d 626 (1994)).

▮▮▮▮ Once the Commonwealth sustains its initial burden of proving a drug nexus by a preponderance of the evidence, the Forfeiture Act directs that the burden shifts to the claimant to rebut the presumption that the money is forfeitable:

> (j) **Owner's burden of proof.**—At the time of the hearing, if the Commonwealth produces evidence that the property in question was unlawfully used, possessed or otherwise subject to forfeiture under section 6801(a), the burden shall be upon the claimant to show:
>
> (1) That the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale thereon.
>
> (2) That the claimant lawfully acquired the property.
>
> (3) That it was not unlawfully used or possessed by him. In the event that it shall appear that the property was unlawfully used or possessed by a person other than the claimant, then the claimant shall show that the unlawful use or possession was without his knowledge or consent. Such absence of knowledge or consent must be reasonable under the circumstances presented.

42 Pa.C.S. § 6802(j). Thus, to discharge this burden, the claimant must establish that: (1) he owned the money; (2) he lawfully acquired it; and (3) it was not unlawfully used or possessed by him. *Accord Marshall,* 698 A.2d at 578; *$11,600.00 Cash,* 858 A.2d at 167 (citing *Holt,* 635 A.2d at 238); *$32,950.00 U.S. Currency,* 634 A.2d at 699.

The shifting burdens of proof applicable under the Forfeiture Act represent a necessary balancing. The fact that money may "facilitate" a violation of the Controlled Substance Act is not enough to criminalize that conduct in the same way

that the actual sale or purchase of the drugs warrants criminal punishment and sanction. By burdening facilitation with the prospect of the loss of very real and substantial assets, however, the General Assembly increases the cost of engaging in the drug trade, which acts as an additional deterrent to the crime. In exchange for the fact that the Commonwealth is able to seize and retain a person's property under a civil standard, and subject to a lower civil standard of proof, the claimant is afforded the opportunity of rebuttal.

 Here, the Commonwealth's documentary evidence proved that Narcotics Strike Force officers saw three typical street drug transactions, in each of which money was handed to Burgos in exchange for drugs. After two of those transactions, Burgos handed the buy money to appellee. Police officers subsequently apprehended two of the three drug purchasers and confiscated zip-lock packets of cocaine from each, thus proving that what had looked like drug deals in fact were. Police then arrested both Burgos and appellee, finding three additional zip-lock packets of cocaine and $7.00 cash on Burgos, and $6,425.00 in cash on appellee. All of the confiscated zip-lock packets were laboratory tested, and each was found to contain cocaine. The trial court found that this evidence sufficiently discharged the Commonwealth's initial burden of demonstrating a nexus between the money seized from appellee and illegal narcotics dealing, reasoning as follows:

> Appell[ee] was stopped shortly after [the] last transaction, in possession of the drug proceeds. The pattern of behavior exhibited by Burgos and [appellee], namely engaging in multiple transactions over a short period of time in the same location[,] exemplifies the business of dealing drugs. The five baggies confiscated from the buyers and Burgos each had an approximate street value of twenty dollars, and [appellee] was arrested with sixty-nine twenty dollar bills in his possession. Furthermore, it is common for drug dealers to keep substantial sums of money in close proximity to a controlled substance. *See Commonwealth v. $16,208.38 U.S.*

*Currency Seized from Holt,* 160 Pa.Cmwlth. 440, 635 A.2d 233, 239 (1993).

Slip op. at 4–5.

■■■ We see no error in the trial court's finding.[7] Although the nexus in this case may not have been sufficient to connect all of the cash directly to the drug trade (as proceeds or as facilitation) beyond a reasonable doubt, we believe it clearly was sufficient under the Forfeiture Act's preponderance standard. The two ineluctable elements involved in the retail distribution of illicit drugs are drugs and cash. It is not unusual for drug dealing confederates to engage in a division of labor, whereby one controls the drugs and the other the money. Police in this case observed not one, not two, but three sales of illegal narcotics to walk-up customers in the space of little over half an hour. Appellee did not hold the stash of drugs, and Burgos did not retain the cash proceeds of the sales.[8] However, contrary to appellee's current argument, the evidence clearly showed that he was not merely present; instead, he controlled the money, including the proceeds from the three sales police had actually observed, which warranted a reasonable inference that he acted in concert with Burgos in conducting the drug deals. As the trial judge rightly noted, the behavior observed by police in this case "exemplifies the business of dealing drugs."

The fact that appellee and Burgos were observed in the actual act of dealing drugs supports the trial court's reason-

7. Of course, in many instances, the trial judge in a forfeiture proceeding hears live witnesses and is in a position to render demeanor-based credibility determinations. In such instances, the usual deference applicable to credibility determinations may be dispositive. *E.g., $11,600.00 Cash,* 858 A.2d at 163 n. 3; *McJett,* 811 A.2d at 111. In the case *sub judice,* however, there was no demeanor-based credibility determination made by the trial judge, and his reasons for ruling as he did are subject to objective evaluation. *See generally Daniels v. Workers' Compensation Appeal Bd. (Tristate Transport),* 574 Pa. 61, 828 A.2d 1043, 1053–54 (2003) (discussing proper role of credibility determinations in cases of disputed evidence where live testimony is not heard).

8. When Burgos was arrested, he was in possession of only $7.00, while the estimated street value of each zip-lock packet was $20.00. The logical inference is that he handed appellee the proceeds of all three observed sales.

able conclusion that it was more likely than not that the entirety of the money appellee held was "furnished or intended to be furnished ... in exchange for a controlled substance ... [or represents the] proceeds traceable to such an exchange," or was "used or intended to be used to facilitate [a] violation of [the Controlled Substance Act]." 42 Pa.C.S. § 6801(a)(6)(i)(A), (B). The trial judge was not obliged to be so naïve as to assume that these three sales were the only ones appellee and Burgos had conducted, or intended to conduct. In addition, the trial judge reasonably deemed it significant that the packets of crack cocaine which had been sold had a $20.00 street value and appellee was in possession of an inordinate number of twenty-dollar bills, as well as bills representing multiples of $20.00. The fact that the police did not personally observe enough sales to account for the total amount of money in appellee's pocket does not mean that the money cannot have been related to the drug dealing enterprise. As the Commonwealth notes, "the uncommonly large amount of cash found on [appellee] at night, while he was selling drugs on the street, was consistent with an intended purchase of, or recent sale of, a large amount of illegal drugs." Brief for Appellant, 26 (emphasis omitted).

Moreover, in light of the fact that appellee and Burgos were observed as they acted in concert, the trial court did not err in invoking the "close proximity" rebuttable presumption which is set forth in the Forfeiture Act. Appellee was charged with both possession with intent to deliver narcotics and conspiracy. Neither the trial judge for forfeiture purposes, nor a fact-finder in a criminal trial, would be obliged to accept appellee's ultimate defense of mere presence; the active role appellee played was sufficient to warrant a finding that he was a conspirator in a two-man drug dealing operation, even if an ultimate fact-finder might be convinced otherwise. Moreover, the controlled substances distributed and possessed by Burgos were in sufficiently close proximity to the money appellee retained—indeed, Burgos was "close enough" to appellee that he could simply hand the cash over from the sales—as to trigger the Forfeiture Act's rebuttable presumption that the

money represented "proceeds derived from the selling of a controlled substance in violation" of the Controlled Substance Act. *See* 42 Pa.C.S. § 6801(6)(ii). *Cf. Holt*, 635 A.2d at 239.

In discounting the trial court's finding of a nexus between the entire amount of cash and the drug activity in which appellee and Burgos were engaged, the Commonwealth Court panel failed to evaluate the totality of the circumstances, and even as to those circumstances it considered individually, it suggested an unnecessarily absolutist level of correspondence between the money and the drug activity which is not warranted by the Forfeiture Act or the cases interpreting it. Thus, the panel apparently deemed it irrelevant, as a matter of law, that appellee was found in possession of sixty-nine twenty-dollar bills, in a case where he and his cohort had conducted multiple sales of $20.00 worth of cocaine. In the panel's view, for the denomination of the bills to suggest that the money represented drug proceeds, the Commonwealth had to present evidence that "at a particular time, [appellee] possessed no twenty-dollar bills and then, with or without Burgos, he sold sixty-nine packets of crack cocaine, receiving a twenty-dollar bill for each sale." Slip op. at 7 n. 8. Nothing in the Forfeiture Act, or in the law generally, requires such absolute correspondence before evidence may be deemed relevant.[9] As we have noted above, there is no need for the Commonwealth to produce evidence directly linking seized property to illegal activity and circumstantial evidence can be used in order to establish the requisite nexus. *E.g.,* *$11,600.00 Cash*, 858 A.2d at 166. The Commonwealth is merely required to prove that it is more likely than not that there was a nexus between the money and illegal drug sales. *Id.* at 164. The panel here imposed a standard in which logical inferences could play no role, and where the correspondence between fact and inference had to be entire.

**9.** As a general matter, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401; *see also Street Road Bar & Grille, Inc. v. Pennsylvania Liquor Control Bd.*, 876 A.2d 346, 354 (Pa.2005).

In similarly absolutist fashion, the panel stated that the $6,425.00 found on appellee could not be deemed proceeds of the drug trade because appellee and Burgos were selling cocaine in twenty-dollar packets, the amount of money found on appellee was not divisible by 20, and there was no accounting for the difference. In the panel's view, "[i]n order to prove that [appellee] acquired the entire [$6,425.00] from selling $20.00 packets of drugs, the Commonwealth needed to show, *inter alia*, that [appellee] spent some of the money or that he sold some packets of drugs for an amount other than $20.00. Absent such evidence, the Commonwealth did not prove that the entire $6,425.00 constitutes proceeds from the illegal sale of drugs." Slip op. at 7 n. 11. But, again, neither the Forfeiture Act nor the law generally requires such absolute correspondence for evidence to warrant a mere **inference.** The fact that the ultimate amount found on appellee was not divisible by 20 does not mean that the money could not possibly represent the proceeds of this sort of drug-dealing operation. Drug dealers may use a portion of their proceeds for a variety of purposes along the way: to buy lunch, to pay confederates a share, to make change, to advance a buyer a portion of the price of the item. In addition, retail drug dealers may amass money so as to facilitate the purchase of more drugs; under the Act, money which helps to facilitate drug violations is no less subject to forfeit than drug proceeds. The panel's notion that the amount of money and the denominations thereof excluded the possibility that it was drug proceeds, or money intended to facilitate drug violations, is simply erroneous.

The panel's holding that the trial court erred in adverting to the statutory "close proximity" rebuttable presumption is premised on similarly problematic absolutist views. The panel deemed the presumption inoperable because no drugs were found on appellee, and there was no specific finding that, at the moment appellee and Burgos were arrested, they were in close proximity. In addition, the panel noted that it could find no case law in which the presumption had yet been applied, "where the police have arrested two individuals on the street

and have found drugs on one person and a substantial amount of currency on the other;" according to the panel, the presumption is available only in cases where police have searched a building or a vehicle. Slip op. at 7–8 & n. 10.

However distant from each other appellee and Burgos may have been when arrested, the evidence clearly established that they were close enough during the conduct of the actual drug deals that Burgos—who was in personal possession of the drugs—could simply hand the cash proceeds of the sales over to appellee—who was in personal possession of the cash. Moreover, the cash from the three sales police observed was in such intimate proximity with the rest of the cash found upon appellee that it was commingled. In addition, the panel's absolutist approach to the rebuttable presumption simply ignores the fact that the evidence suggested that Burgos and appellee conspired together to sell these drugs. On the question of the presumption being applicable only in cases where the money is found in a vehicle or a building, the simple answer is that the statute imposes no such restriction; the fact that the cases to date have not involved that circumstance does not mean that the circumstance does not fall within the statutory language.

The common, overriding difficulty in the Commonwealth Court panel's approach here consists in its erroneous erection of artificial and absolutist evidentiary requirements before individual facts and circumstances may even be deemed relevant to the question of whether a nexus exists between the money and violations, or facilitations of violations, of the Controlled Substance Act. In adopting this absolutist approach to its reviewing function, the panel committed an error of law. For the reasons we have stated above, the trial court, properly considering the totality of the evidence and properly drawing logical inferences from the evidence presented, did not err in finding a nexus between the entire sum of cash seized from appellee and violations of the Controlled Substance Act.

We also reject appellee's claim, premised upon *Marshall,*

548 Pa. 495, 698 A.2d 576,[10] and *Fontanez,* 559 Pa. 92, 739 A.2d 152,[11] that further evidence was needed in order for the Commonwealth to meet its burden. In both of those cases, this Court reversed forfeitures of large sums of money because no drugs or drug paraphernalia had been found on or near the claimants and no illegal drug transactions had been observed. The case *sub judice* does not suffer from the same drug nexus deficiency that controlled the outcome in *Marshall* and *Fontanez.* The officers in this matter observed three sales of crack cocaine and saw Burgos hand money to appellee after two of those transactions. Furthermore, since there was not enough money found on Burgos to represent proceeds from the sale of even one packet of cocaine, the logical inference is that appellee was directly involved in the operation and held all of the money from the drug sales.

■ We turn now to the question the Commonwealth Court did not reach due to its finding that there was no nexus between the money and Controlled Substance Act violations: *i.e.,* whether appellee sustained his Section 6802(j) burden of proving an innocent source for the money. In an attempt to

10. In *Marshall,* a police officer asked the appellant to step out of a car, at which time the officer noticed that the back seat cushion was pulled away from the upright portion of the seat and that packets of currency were present in the exposed area. After arresting appellant, the officer recovered $3,400.00 in various denominations, divided into packets totaling $100.00 each, and arranged with the individual bills alternated face-up and face-down. The search uncovered no drugs or drug paraphernalia, but a drug-sniffing dog later "alerted" to the money, indicating the residual presence of an illegal substance. The trial court forfeited the money, the Commonwealth Court affirmed, and this Court ultimately held that the evidence did not prove anything more than a suspicion of a possible nexus between the money and violations of the Controlled Substance Act.

11. In *Fontanez,* the appellant was driving through his neighborhood when he was stopped for a traffic violation. As the appellant exited his car, the officer noticed an open paper bag on the floor containing money. The officer was familiar with appellant and his involvement in narcotics activity in the area of the stop, but did not discover any drugs or observe any transaction or illegal activity. The trial court forfeited the money, the Commonwealth Court affirmed, and this Court determined that there was not even an identifiable crime to which a nexus with the money could be made. At most, this Court noted, the suspicions merited further investigation or surveillance.

meet his burden, appellee offered non-testimonial evidence suggesting that he had earned the money working at a four-month, undocumented job which paid him $10.50 per hour. Appellee also claimed that the cash had been withdrawn from the bank account of Soberal, his children's mother, and provided receipts from two withdrawals made over two weeks before his arrest, one on June 1, 2000 and another on June 2, 2000. In his answers to interrogatories, appellee also claimed that the money was to be used to make repairs on a house that he and Soberal had recently purchased, albeit he failed to provide any documentation to prove the existence of the house or their purchase of it. Appellee also did not offer any explanation for his activities on the night of his arrest, although an interrogatory had specifically asked him to do so.

The trial court found appellee's evidence unpersuasive, carefully explaining its reasons for discounting the varied claims as follows:

> [Appellee] has utterly failed to meet his burden of showing that the money seized was lawfully acquired and not unlawfully used and possessed by him. The scant evidence provided by appellant undercuts and debunks his claim that he lawfully possessed such a large sum of money. Appellant claims that his only source of income is an undocumented four month [old] job at which he earned $10.50 per hour. [Appellee] fails to specify how many hours a week he worked. It is preposterous, therefore, to believe that this small amount of income was the source of the seized amount and that he saved every penny of his sole job for months, using the unknown amount of earned funds for nothing else. His bald contention that he was to use the funds for restructuring a house he just purchased without even providing documentation of the house purchase or any contract receipt or proposal for restructuring undermines any credibility that he would just happen to be carrying those funds for that purpose while engaged in drug dealing. How he could even purchase a house given his employment situation also strains credulity. Equally unbelievable is his vain effort to paint the possession of the funds as documented

inasmuch as $5300.00 was withdrawn from a bank account more than two weeks before. The fact th[at] this amount ha[d] been deposited the same day it was withdrawn, that documentation was absent as to the source of those funds and that the previous average monthly account balance was $118.00 all demonstrates money laundering, not legitimacy.[12] Moreover, the account was not even in appellant's name.

Slip op. at 5–6. We see no error in the trial court's reasoning.

Furthermore, the trial court noted that the average monthly balance in Soberal's account was a mere $118, and there was no evidence as to the source of the large deposits that were rapidly followed by the cash withdrawals appellee cited as proof of a legitimate source of the money. In such a circumstance, the trial court did not err in concluding that this evidence suggested money laundering, rather than an independent and legitimate source for the money. Nor did the trial court err in viewing with skepticism appellee's claim that he withdrew the cash only to carry it about on his person for over two weeks, when the money supposedly was dedicated to paying for renovations on a house he had bought—a house whose existence he never proved, and a house he was unlikely to have had the resources (over and above the money seized) to purchase, given his circumstances.[13] On such a record, the trial court did not err in finding that appellee's explanation for the source of the money was incredible and could not with-

12. Contrary to the trial court's statement, the official record demonstrates that a cashier's check, in the amount of $1,514.48, was deposited into Soberal's account in June 1, 2000. That same day, a withdrawal was made for the same amount. The next day, June 2, 2000, another withdrawal was made, this time in the amount of $5,300.00.

13. It is also significant that appellee failed to put forth an innocent explanation for his activities on the night in question. An adverse inference can be drawn from appellee's silence, as it corroborates the Commonwealth's evidence that appellee was involved in illegal drug dealing. *See Commonwealth v. $23,320.00 U.S. Currency*, 733 A.2d 693, 698 (Pa.Cmwlth.1999); *see also Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) ("Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them").

stand scrutiny. *See Holt,* 635 A.2d at 238–39 (trial court not obligated to credit claimant's explanations for source of large amounts of cash). Accordingly, we conclude that there was sufficient competent evidence to support the trial court's forfeiture of the $6,425.00.

For the foregoing reasons, we reverse the order of the Commonwealth Court and reinstate the forfeiture order of the trial court. Jurisdiction relinquished.