IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania    :
    :
      v.             :   No. 833 C.D. 2013
    :   Submitted: May 14, 2014
Alfred James Porrino,      :
           Appellant    :


BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge


OPINION
BY JUDGE LEAVITT                    FILED: July 23, 2014

          Alfred James Porrino, *pro se,* appeals an order of the Court of Common Pleas of Montgomery County (trial court) that granted the Commonwealth of Pennsylvania's request for forfeiture of $594 in cash and denied Porrino's motion for return of that cash to him. Police seized the cash from Porrino when they arrested him on drug charges; nevertheless, in the course of this arrest the police did not find any illegal drugs on Porrino or in his home, which they searched under authority of a warrant. The trial court held that the Commonwealth's evidence, albeit circumstantial, proved that the forfeited $594 represented the proceeds of illegal drug sales by Porrino. Concluding that the Commonwealth did not prove a substantial nexus between the $594 and illegal drug trafficking, we reverse.

We begin with a review of the uncontroverted facts. On May 6, 2011, police executed a search warrant at the home of Porrino's mother, searching for illegal drugs.[1] They found none. In Porrino's bedroom, in plain view, police did find a pair of jeans and a cell phone. In the bedroom closet, the police found $594 in cash in a wallet. They also found baggies and a scale in the bedroom of Porrino's brother.[2] The police seized the cell phone, the cash, the wallet and several items of identification, including Porrino's driver's license and social security card. Porrino told the police that he had earned the cash through his job and wanted it back.

At the conclusion of the search, Porrino was placed under arrest and charged with three counts of possession with intent to deliver drugs; three counts of misdemeanor drug possession; and three counts of misdemeanor possession of drug paraphernalia (the cash, sandwich baggies and the cell phone). Porrino pled guilty to one count of misdemeanor possession of a controlled substance and received a one to two year prison sentence. The other criminal charges were dropped.

Porrino filed a motion for the return of his property. The Commonwealth responded in its answer with a request that the property be

---

[1] In an affidavit of probable cause requesting the search warrant, Detective Michael Fedak stated:

I know through my training, knowledge and experience that drug traffickers such as Porrino need a base of operation … where they feel safe in storing their illegal narcotics, repackaging their illegal narcotics for re-sale and storing the US Currency derived from their illegal sales…. I believe Porrino is using his residence … as his base of operation for his illegal drug trafficking business.

Certified Record Item No. 32, Attachment A.

[2] The scale is not part of the forfeiture proceeding; the Commonwealth acknowledges that it did not belong to Porrino but, rather, to his brother.

forfeited.  The trial court held a hearing on March 7, 2013, at which Porrino and the Commonwealth presented evidence on their respective applications.  At the outset of the hearing, the Commonwealth agreed to return Porrino's driver's license and social security card and other items of personal identification that had been found, presumably, in the wallet.[3]  This left only the $594 in dispute.

The Commonwealth presented the testimony of Detective Charles Naber of the West Norriton Police Department and the Montgomery County Drug Task Force.  Naber testified that Porrino participated in three "controlled buys" in April and May of 2011 set up by the police.[4]  Notes of Testimony, March 7, 2013, at 20 (N.T. ___).  Naber and a police officer gave a confidential informant cash for these controlled buys.  This informant called Porrino, who, according to Naber, arrived at the designated location in a black Volvo with a passenger in the front seat.  Naber testified that a sale of crack cocaine took place inside the vehicle.  In all, the police orchestrated three controlled buys, two in April and one in May, a few days before the search of Porrino's home on May 6, 2011.  Naber identified Porrino as one of the two persons in the Volvo because on one occasion he followed the Volvo to a gas station and saw Porrino pump gas.

Naber helped execute the search warrant at the home of Porrino's mother.  He testified that the jeans found in Porrino's bedroom had sandwich baggies in the pocket with the corners torn off; Naber stated this was consistent

---

[3] There was no discussion about the cell phone.  Porrino states in his brief that the Commonwealth ultimately returned his cell phone to him.  The appeal before the Court relates only to the seized cash.

[4] In a "controlled buy," an undercover police officer or cooperating witness purchases illegal items, typically a controlled substance, from a criminal suspect. http://www.shannonsextonlaw.com/Practice-Areas/A-Controlled-Buy-Analysis.shtml.

3

with the way dealers package illegal drugs. Naber reported that police found Porrino's wallet with $594 in cash in the bedroom closet. Naber stated that the wallet was inside an item of clothing, but could not be more specific. Specifically, he testified:

> I think it was in a coat, but I'm not sure. Clothing in a closet.
> I'm not sure what.

N.T. 33.

On cross-examination, Naber confirmed that the cash given to the confidential informant had been "prerecorded," *i.e.*, they were marked bills. N.T. 28. Naber did not claim that any part of the $594 seized from Porrino included the marked bills. Naber also stated that he assumed, but did not actually know, that the substance picked up by the informant in the controlled buys had been forwarded to the lab for testing. He acknowledged that the Commonwealth's records did not include a lab report identifying the substances involved in the controlled buys. Accordingly, Naber could not confirm that what took place in the Volvo was the sale of crack cocaine. Likewise, Naber offered no information on the confidential informant, or why he was a trustworthy source of information on what transpired in the vehicle. Naber did not testify that he could see into the Volvo.

Porrino testified on his own behalf. He acknowledged that he had a drug habit and that was why he pled guilty to possession. He denied that he ever sold drugs or drove the black Volvo described by Naber, let alone appeared at the parking lot for the alleged controlled buys. He denied that baggies had been found in his jeans, claiming that they were found in his brother's room. Porrino testified that he had a steady, full-time job with a roofing and siding company that began in

4

December 2010. He requested the trial court to allow him to get his parole agent on the phone to confirm this employment, but his request was denied. Porrino testified that his employment with the roofing company was the source of the cash seized from his wallet. Porrino explained that he always keeps his wallet in the bedroom closet and that he had the cash on hand to purchase his own food and clothing and to help his mother with her costs in running the house. He stated that his wallet was in the pocket of his pants, which were folded and on a shelf in the closet.

Following the presentation of testimony, the Commonwealth's attorney argued:

> [G]iven the three controlled buys, *given the large amount of money found on Mr. Porrino*, given the fact that he's found with baggies that are clearly used to package drugs, I would submit that there's clearly enough for a nexus there.

N.T. 36 (emphasis added). In response, Porrino argued that the Commonwealth did not prove that any of the seized cash could be connected to the "prerecorded U.S. currency" given to the confidential informant. N.T. 20, 42. Nor did the Commonwealth offer any evidence about the amount of cash involved in these alleged drug transactions and whether it corresponded to the amount of cash seized from his wallet. Finally, he argued that the Commonwealth did not even prove that illegal drugs changed hands in the controlled buys.

The trial court found Naber's testimony credible and Porrino's testimony not credible. The trial court denied Porrino's petition for return of property and granted the Commonwealth's petition for forfeiture of the $594. The trial court concluded that the Commonwealth's evidence established a substantial nexus between the "large amount" of cash and Porrino's sale of cocaine to the

confidential informant several days before the cash was seized. Porrino appealed. In its PA. R.A.P. 1925(a) opinion, the trial court emphasized the temporal proximity between the third controlled buy, which took place "only a few days before" the search warrant was executed, and the cash seized from Porrino. Trial Court Opinion at 4, 5.[5] Accordingly, the trial court concluded that the seized cash represented proceeds from Porrino's sale of cocaine. The matter is now before us for our consideration.[6]

On appeal, Porrino argues that the trial court erred. He contends that the Commonwealth's evidence did not prove a substantial nexus between the $594 seized from him and the sale of cocaine to a confidential informant.[7] The so-called "controlled buys" were not proven to involve cocaine. Indeed, the Commonwealth dropped the charge that he had sold a controlled substance as well as the charge of possessing drug paraphernalia. The Commonwealth rejoins that it proved a substantial nexus between the $594 in cash and illegal drug trafficking because "the currency [was] found in close proximity to other drug paraphernalia," namely, the baggies with the corners torn off. Commonwealth's Brief at 9.

---

[5] The trial court referred to a scale found in the home. However, the Commonwealth admitted that the scale was found in the bedroom of Porrino's brother and belonged to the brother.

[6] In an appeal from a forfeiture proceeding, this Court reviews whether findings of fact made by the trial court are supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law. *Commonwealth of Pennsylvania v. $11,600.00 Cash, U.S. Currency*, 858 A.2d 160, 163 n.3 (Pa. Cmwlth. 2004). Our standard of review is deferential with respect to the trial court's findings of fact. Whether the evidence, as a whole, is sufficient to support a legal conclusion is a question of law. *Commonwealth v. Marshall*, 698 A.2d 576, 599 (Pa. 1997). Our scope of review over questions of law is plenary. *Commonwealth v. Real Property and Improvements at 2338 N. Beechwood St.,* 65 A.3d 1055, 1059 (Pa. Cmwlth. 2013).

[7] Porrino contends he proved that the cash came from his earnings at his job. Attached to his brief are documents to support his trial testimony that he was employed. We cannot consider this documentary evidence because it was not submitted into the record before the trial court.

6

The Judicial Code abolishes all property rights in cash furnished in exchange for an illegal controlled substance. Section 6801 of the Judicial Code, commonly known as the Controlled Substances Forfeiture Act, states, in relevant part, as follows:

>     (a) Forfeitures generally.---The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:
>
>     * * *
>
>     (6)(i) All of the following:
>
>         (A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act, and all proceeds traceable to such an exchange.
>
>         * * *
>
>     (ii) …Such money and negotiable instruments found in close proximity to controlled substances possessed in violation of The Controlled Substance, Drug, Device and Cosmetic Act shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act.

42 Pa. C.S. §6801(a)(6)(i), (ii). Central to a civil forfeiture case is that money found "in close proximity" to drugs is rebuttably presumed "to be proceeds derived from the selling of a controlled substance." 42 Pa. C.S. §6801(a)(6)(ii). Absent

7

that presumption, the Commonwealth bears the burden of proving by a preponderance of the evidence a "sufficient or substantial nexus" between the cash in question and a transaction involving controlled substances. *Commonwealth v. $2,523.48 U.S. Currency*, 649 A.2d 658, 660 (Pa. 1994) (quoting *Commonwealth v. 502-504 Gordon Street*, 607 A.2d 839, 842 (Pa. Cmwlth. 1992)). Finally, Section 6801 of the Judicial Code is "subject to strict construction." *Commonwealth v. $6,425.00 Seized From Esquilin*, 880 A.2d 523, 530 n.6 (Pa. 2005).

In an application for the return of property, the moving party must establish lawful possession of cash seized from him. *In re Ten Thousand Six Hundred Eighty Dollars ($10,680.00)*, 728 A.2d 403, 407 (Pa. Cmwlth. 1999). Where the Commonwealth does not dispute that currency was taken from the petitioner's possession, the petitioner "need only allege that the money belongs to him." *Commonwealth v. Fontanez*, 739 A.2d 152, 154 (Pa. 1999). The burden then shifts to the Commonwealth to prove that the cash was obtained through illegal drug activity. *Commonwealth v. $26,556.00 Seized From Polidoro*, 672 A.2d 389, 392 (Pa. Cmwlth. 1996). A trial court's denial of a motion for return of property does not mean that the property in question is automatically forfeited. Rather, "[i]t is improper to award forfeiture, under the Controlled Substances Forfeiture Act, unless a request for forfeiture has been duly made" by the Commonwealth. *Commonwealth v. Mosley*, 702 A.2d 857, 859 (Pa. 1997).

To make its case for forfeiture, the Commonwealth need not present evidence "directly linking seized property to illegal activity and circumstantial evidence can be used" to make the Commonwealth's case. *Esquilin*, 880 A.2d at 533. However, circumstantial evidence that shows "only the possibility or the

8

suspicion of a nexus between the money and some type of drug activity" will not support a forfeiture. *Commonwealth v. Marshall*, 698 A.2d 576, 579 (Pa. 1997). In *Marshall*, the Supreme Court established some limits to the Commonwealth's use of circumstantial evidence in a civil forfeiture case where the forfeitable property is not found in close proximity to illegal drugs, thereby requiring the Commonwealth to make its case without the assistance of the presumption in 42 Pa. C.S. §6801(a)(6)(ii).

*Marshall* began as a traffic stop case. When State Police Troopers learned that Marshall, a passenger in the back seat, was the subject of an outstanding arrest warrant, they requested him to step out of the car. This revealed that he had been sitting on $3,400, which was packaged in $100 bundles. No drugs were found. Marshall, who was unemployed, stated that $400 represented his savings from the occasional catering jobs he did and the remaining $3,000 had been loaned to him by a friend and a relative to buy food and supplies for a catering job. The driver contradicted this account, telling police that $400 of the total belonged to him.

At the forfeiture hearing, the Commonwealth's witness testified that the cash seized from Marshall had been bundled in the manner of drug dealers, *i.e.*, in $100 packages, and that a drug-sniffing dog had alerted on that cash; the dog's alert indicated the residual presence of controlled substances on the cash. Marshall repeated the account he gave the Troopers, namely that the cash was his and that it represented the proceeds of a loan and his savings. The trial court found Marshall not credible and ordered the $3,400 forfeited. The Commonwealth Court affirmed. *Commonwealth v. Marshall*, 663 A.2d 815 (Pa. Cmwlth. 1995).

The Supreme Court reversed, holding that the facts relied upon by the trial court were insufficient, as a matter of law, to prove a substantial nexus between the $3,400 and "drug activity."[8] The Supreme Court explained that the above-recited circumstantial evidence did not lead to a single inference, *i.e.*, an inference of drug activity. The bundling of the cash into $100 packages was "equally consistent with an innocent person's attempt to simplify and promote precision …." *Marshall*, 698 A.2d at 579. Likewise, the presence of a "residual presence of drugs" shown by the dog alert was not dispositive because "completely innocent citizens" could possess cash that had been involved "at some unknown time in the past" in a drug transaction." *Id.* Neither drugs nor drug paraphernalia were found on Marshall or in the vehicle. Finally, disbelieving Marshall's testimony did not mean that Marshall had been involved in illegal drug activity.[9] Based on this analysis, the Supreme Court concluded that the "facts relied upon by the trial court in this case" established "only the possibility or the suspicion of a nexus between the money and some type of [illegal] drug activity." *Id.*

Unlike the appellant in *Marshall*, Porrino does have a drug history. However, the Supreme Court has also provided direction on the significance of a drug history where, as here, no drugs were found in close proximity to the cash

---

[8] The findings relied upon by the trial court were as follows:

> 1) Appellant had been unemployed for 1-1/2 years prior to the arrest; 2) Appellant and the driver gave inconsistent stories concerning the ownership of the money; 3) the currency was bundled in the manner consistent with drug dealing and was found between the seat cushions; 4) the drug-sniffing dog alerted on the cash; and 5) Appellant's testimony was not credible.

*Marshall*, 698 A.2d at 578-79.

[9] The dissent argued, *inter alia*, that more weight should have been given to the trial court's credibility determination with respect to Marshall.

10

sought to be forfeited by the Commonwealth. It provided this direction in *Fontanez*, 739 A.2d 152.

*Fontanez* concerned the seizure of $2,650 from Efraim Fontanez, who was stopped for a motor vehicle violation late at night in an area "known for drug activity." *Id.* at 153. Police testified that Fontanez was the member of a family renowned for its involvement in "narcotics activity." *Id.* Fontanez refused to answer any questions about the $2,650 found in a paper bag on the floor of his car. Back at the police station, a drug-sniffing dog alerted on this cash. Sometime after the vehicle stop, Fontanez was arrested for transporting drugs; the Supreme Court found this fact to be entitled to little or no weight in the forfeiture proceeding because charges from the arrest had been dismissed. The Supreme Court explained that the allegation that Fontanez "transported drugs at a later date shed no light on whether money possessed by that person at a time when he undisputedly did not have any narcotics, may be considered contraband." *Id.* at 155. After reviewing all the above-listed facts, the Supreme Court concluded that

> the evidence presented by the Commonwealth was insufficient as a matter of law to sustain its burden of proving that the money was contraband.

*Id.* at 154.

More recently, in *Commonwealth v. $15,000 U.S. Currency*, 31 A.3d 768 (Pa. Cmwlth. 2011), this Court refused to allow the forfeiture of cash that had been bundled in the way preferred by drug dealers. Further, this cash had been seized from an individual recently convicted of drug charges. Finally, the cash was seized from a rental vehicle for which the driver could not produce a rental agreement; likewise, the driver could not produce a driver's license. We

11

concluded that this collection of evidence proved no more than a suspicion of a nexus and, thus, was not sufficient to support a forfeiture.

We turn to the instant appeal. There is no dispute that the cash found in Porrino's wallet belonged to him; accordingly, this placed the burden upon the Commonwealth to prove it was contraband. *$26,556.00 Seized From Polidoro*, 672 A.2d at 392. The dispositive question is whether the Commonwealth met its burden of proving that the $594 in cash found in Porrino's wallet can be traced to his sale of drugs. This question is governed by the principles established in *Marshall*, *Fontanez* and *Esquilin*, as well as the requirement that the Controlled Substances Forfeiture Act is to be strictly construed.

Naber testified that Porrino appeared at the designated location for the controlled buys in a black Volvo and that the informant got in the back seat. However, Naber could not identify the amount of cocaine sold or the amount of cash involved. Nor could he verify that it was cocaine that changed hands. A criminal conviction is not a necessary prerequisite for a civil forfeiture. However, even under the preponderance of evidence standard for a civil proceeding, there must be substantial evidence offered to show that the substance collected by the informant was, in fact, an illegal drug. *See, e.g., Esquilin*, 880 A.2d at 531 (noting that "the confiscated zip-lock packets were laboratory tested, and each was found to contain cocaine" thereby demonstrating a nexus between the cash and "illegal drug dealing …."). By contrast here, the Commonwealth did not present evidence of lab testing of what was confiscated from the informant. Absent this evidence, the claim that Porrino sold cocaine to an informant was unproven by any standard of evidence. Porrino, who acknowledged his drug dependency, pleaded guilty to one count of possessing drugs, not selling them. As in *Fontanez,* the charge that

12

Porrino sold drugs was dropped and not proven. The unproven charge has no value.

Even assuming that the controlled buys set up by the police involved a controlled substance, the Commonwealth's evidence was not sufficient to prove that the $594 was cash "furnished … in exchange for a controlled substance." 42 Pa. C.S. §6801(a)(6)(i)(A). The Commonwealth did not rule out legitimate sources for Porrino's cash, such as showing that Porrino had been unemployed for years. *See, e.g., Marshall*, 698 A.2d 576 (evidence showed that Marshall had been unemployed for over a year when the Commonwealth seized $3,400 from him). Nor did it show that Porrino made inconsistent statements about the source of the cash. *See, e.g., Commonwealth of Pennsylvania v. $11,600.00 Cash*, *U.S. Currency*, 858 A.2d 160 (Pa. Cmwlth. 2004) (individual first stated that he saved $11,600 from his job at a pizza shop and later that he borrowed it from his father). Porrino consistently explained that he had earned the $594 through his full-time job. Naber did not correlate the amount of money involved in the alleged drug sales to the amount of cash seized. Naber did not claim that the $594 was bundled or secreted in a manner used by drug dealers or even that it tested positive for the presence of drugs.[10] Naber could not even say where or how the $594 was located, stating only that it was in an article of clothing in the bedroom closet. Naber did not refute Porrino's testimony about the cash and its source in any regard.

Finally, Naber conceded that he could not relate any of the marked bills given to the informant to the $594 forfeited. The only reasonable inference is

---

[10] *Cf. Commonwealth v. Nineteen Hundred and Twenty Dollars United States Currency*, 612 A.2d 614 (Pa. Cmwlth. 1992) (wherein $1,920 was found in a wallet, absent of any other contents, such as a driver's license, and stuffed between the driver's seat and a center console).

that none of the marked bills used in the transactions were found among the bills taken from Porrino's wallet or elsewhere in the house during the search. Stated otherwise, the cash used in the alleged drug sale "a few days earlier" was not the cash removed from Porrino's wallet.

No drugs were found on Porrino or in his home. There is no presumption that cash found in close proximity to torn sandwich baggies can be presumed to be the proceeds of a drug transaction. *Cf.,* 42 Pa. C.S. §6801(a)(6)(ii). The Commonwealth's argument in this regard must be rejected. Even so, the cash was not found "in close proximity" to these sandwich baggies. *See Esquilin*, 880 A.2d at 532 (holding that Esquilin, who had no drugs on his person, was within arm's length of the person who did have drugs, which was sufficient to trigger the statutory presumption for property found in "close proximity" to drugs). Likewise, the statute does not provide that any cash found in a person's home "a few days" after an alleged illegal drug transaction will be presumed to be the proceeds of drug trafficking. The unproven charge that Porrino sold cocaine several days before the $594 was seized does not shed "light on whether money possessed by that same person, at a time when he undisputedly did not have any narcotics, may be considered contraband." *Fontanez*, 739 A.2d at 155. As in *Marshall*, the Commonwealth's circumstantial evidence allowed for more than one inference; it did not rule out an innocent basis for the $594 seized from Porrino.

The Commonwealth's attorney argued, in conclusory fashion, that $594 was a "large amount of money [and] found on Mr. Porrino." N.T. 36. Actually, the $594 was found in a closet, not on Porrino. More importantly, there is no presumption that a "large amount" of cash signifies that it was derived from drug trafficking. Both *Marshall* and *$15,000 U.S. Currency* involved larger

14

amounts of cash, *i.e.*, $3,400 and $15,000 respectively, but the amounts proved no more than a suspicion of their connection to some illegal activity. In any case, "it is not against the law to carry cash." *Commonwealth v. $9,000 U.S. Currency*, 8 A.3d 379, 388 (Pa. Cmwlth. 2010).

The Commonwealth had the burden to establish that the money that was seized from Porrino's wallet represented "proceeds traceable to" an "exchange for a controlled substance in violation of the Controlled Substance, Drug, Device and Cosmetic Act [Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§780-101 – 780-144]." 42 Pa. C.S. §6801(a)(6)(i)(A). We conclude that "the evidence presented by the Commonwealth was insufficient as a matter of law to sustain its burden of proving that the money was contraband." *Fontanez*, 739 A.2d at 154. Accordingly, the "facts relied upon by the trial court" showed "only the possibility or suspicion of a nexus" between the $594 seized from Porrino and drug trafficking. *Marshall*, 698 A.2d at 579. At most, the Commonwealth's evidence proved only a suspicion of a nexus.[11] *Id.*

Accordingly, we reverse the order of the trial court.

_____
MARY HANNAH LEAVITT, Judge

---

[11] If the Commonwealth establishes a substantial nexus, the burden shifts to the person claiming the cash to prove that he owns the money, lawfully acquired the money, and did not unlawfully use or possess the money. *Commonwealth v. $16,208.38, U.S. Currency Seized from Holt*, 635 A.2d 233, 238 (Pa. Cmwlth. 1993). Because the Commonwealth failed to prove a nexus, the burden of proof never shifted to Porrino. It is therefore irrelevant that the trial court found Porrino not credible.

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 833 C.D. 2013 |
| | : | |
| Alfred James Porrino, | : | |
| Appellant | : | |

## ORDER

AND NOW, this 23rd day of July, 2014, the order of the Court of Common Pleas of Montgomery County in the above-captioned case, dated March 7, 2013, is hereby REVERSED.

_____
MARY HANNAH LEAVITT, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania :
 :
   v. : No. 833 C.D. 2013
 : Submitted: May 14, 2014
Alfred James Porrino, :
   Appellant :


**BEFORE:** **HONORABLE DAN PELLEGRINI,** President Judge
   **HONORABLE BONNIE BRIGANCE LEADBETTER,** Judge
   **HONORABLE RENÉE COHN JUBELIRER,** Judge
   **HONORABLE ROBERT SIMPSON,** Judge
   **HONORABLE MARY HANNAH LEAVITT,** Judge
   **HONORABLE P. KEVIN BROBSON,** Judge
   **HONORABLE PATRICIA A. McCULLOUGH,** Judge


**DISSENTING OPINION BY**
**JUDGE LEADBETTER**       **FILED: July 23, 2014**

I must respectfully dissent.

The trial court, as factfinder, credited the testimony of Detective Charles Naber. Naber's testimony established that when police searched Porrino's home they found the currency in the pocket of pants hanging in his closet. In a separate pair of pants belonging to Porrino, police found baggies with the corners torn off in the manner often seen when the corner portion of the baggy is used to wrap a small quantity of cocaine. During the search, police also seized a scale and cell phones. The search of the home occurred a few days after the last of three separate sales of cocaine to a confidential informant. Detective Naber, who witnessed all three sales transactions, testified that Porrino sold the drugs on each

occasion. The sales were arranged when the confidential informant called the phone number of one of the cell phones seized during the search and which Porrino identified as belonging to him.

The factor which distinguishes this case from those relied upon by the majority is that there is direct evidence that the person from whom the cash was seized had, in fact, sold drugs for cash in the recent past. In those other cases, such as *Commonwealth v. Fontanez,* 739 A.2d 152 (Pa. 1999) and *Commonwealth v. Marshall,* 698 A.2d 576, 579 (Pa. 1997), cash was found under suspicious circumstances, but no drugs were found and there was no evidence connecting the individuals to any drug sales. Indeed, in *Fontanez,* the Court specifically noted that "It is undisputed that the officer did not see any transaction or activity involving Appellant or his vehicle that would have tied the money to illegal activity and no criminal charges were ever filed in relation to the seized cash."[1] *Id.* at 153-54.

Here, credited evidence established that Porrino had sold drugs for cash only a few days before cash was found in his pants pocket. I believe the

---

[1] The majority states "The Supreme Court explained that the allegation that Fontanez 'transported drugs at a later date shed no light on whether money possessed by that person at a time when he undisputedly did not have any narcotics, may be considered contraband.' *Id.* at 155." Maj. Op. at 11. However, the charges from that arrest, two months after the cash was seized, were dismissed at the preliminary hearing and only the fact of the arrest, rather than testimony concerning the transaction, credited or otherwise, was cited in support of the forfeiture. Our Supreme Court noted:

> The fact that Appellant was subsequently arrested in an unrelated incident for allegedly transporting drugs similarly carries little, if any, weight. Those charges were dismissed at the preliminary hearing. (R. 61a). Unproven allegations that a person transported drugs at a later date shed no light on whether money possessed by that same person, at a time when he undisputedly did not have any narcotics, may be considered contraband.

*Fontanez*, 739 A.2d at 155.

circumstances here are sufficient to support the factual inference drawn by the trial court of a nexus between the cash and the sale of drugs. While a different conclusion might also have been reached, it is not the function of this court to reweigh the evidence.

For these reasons, I would affirm the decision of the court of common pleas.[2]

_____

**BONNIE BRIGANCE LEADBETTER,**
Judge

Judge Simpson joins in this dissent.

---

[2] The majority points out that there was no evidence to show that the seized cash was the same marked bills involved in the drug sales. However, in *Commonwealth v. $6,425.00 Seized From Esquilin,* 880 A.2d 523, 530 n.6 (Pa. 2005), our Supreme Court made clear that the Commonwealth need not show a direct correlation between particular items of currency and particular sales. There, both cash and drugs were seized immediately after a sale. The trial court ordered all the cash forfeited. On appeal, this court held that because the estimated value of the observed drug transactions was approximately $60.00, only that amount could be forfeited. Our Supreme Court reversed and ordered the entire amount, $6,425.00, forfeited.