J-S46033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON F. HARRIS, JR. | : | |
| | : | |
| Appellant | : | No. 210 MDA 2017 |

Appeal from the PCRA Order January 3, 2017
In the Court of Common Pleas of Centre County
Criminal Division at No(s):  CP-14-CR-0001185-2014

BEFORE:    BOWES, OLSON, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JULY 27, 2017**

Appellant, Aaron F. Harris, Jr., appeals from the January 3, 2017, order entered in the Court of Common Pleas of Centre County dismissing his first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, without an evidentiary hearing.  After a careful review, we affirm.

This Court has previously set forth the relevant facts and procedural history, in part, as follows:

> In the instant case, the testimony showed [Appellant] possessed heroin with the intent to deliver over the span of the days between October 31, 2012[,] and November 5, 2012, which led to the charge of Possession with Intent to Deliver.

---

[*] Former Justice specially assigned to the Superior Court.

Evidence also showed Appellant completed two deliveries to Timothy Wilson on October 31, 2012[,] and November 2, 2012, for which he was charged with two counts of Delivery of a Controlled Substance.

***

[I]ntercepted text messages and calls, surveillance video, and eyewitness testimony also showed Appellant possessed heroin with the intent to deliver on November 3, 2012[,] and that the heroin Appellant possessed was ultimately delivered to individuals at a nearby school and the Arena Bar and Grill that evening by Appellant and Mr. Wilson.

Contacts between Appellant and Mr. Wilson established Appellant was bringing heroin to Mr. Wilson that day, and Mr. Wilson had several individuals who wished to purchase said heroin. Once Appellant arrived at Mr. Wilson's home, a phone call was intercepted between Mr. Wilson and Melissa Colby. During that phone call, Mr. Wilson indicated he had just received heroin from Appellant and would be using the heroin himself to test the quality.

Approximately a half hour later, another phone call was intercepted in which Mr. Wilson and Ms. Colby ma[d]e arrangements for Mr. Wilson and Appellant to meet her at a nearby school for a heroin purchase, after [Mr. Wilson] [took] heroin to his paramour, Colleen Berrigan, who [was] working at the Arena Bar and Grill. Shortly after that phone call, Mr. Wilson and Appellant were observed exiting Appellant's vehicle at the Arena [Bar and Grill] and entering the restaurant. After Appellant and Mr. Wilson left the Arena Bar and Grill, another phone call was intercepted in which Mr. Wilson indicated to Ms. Colby they had arrived at the Fairmont school. Ms. Colby indicated she would be along in a few moments to pick up the heroin.

Evidence also demonstrated Appellant possessed heroin with the intent to deliver on November 5, 2012, and did in fact deliver it to Mr. Wilson at his residence. Again, phone calls and text

- 2 -

messages were intercepted between Mr. Wilson and Appellant indicating Appellant was travelling to State College with heroin for Mr. Wilson to distribute. Later, messages indicated the vehicle Appellant was driving had a flat tire and the vehicle was consequently towed to a garage in Milesburg for repair. Mr. Wilson contacted Appellant approximately a half an hour later via text message, asking if the vehicle had [been] repaired yet as he still had several people waiting to make heroin purchases.

Later that evening, the vehicle Appellant was driving was observed leaving Milesburg, stopping at a gas station, then leaving the gas station and turning onto Mr. Wilson's street, at which point surveillance was discontinued. The next day, Mr. Wilson left a voicemail for Appellant, indicating there [were] many individuals in town who still wish[ed] to purchase heroin and it would be worthwhile for Appellant to return to State College with more heroin.

Trial Court Opinion, 4/9/15, at 2-3.

At the conclusion of a bench trial on October 27, 2014, [at which Appellant was represented by counsel,] Appellant was found guilty of [two counts of delivery of a controlled substance and one count each of possession with the intent to deliver a controlled substance, criminal use of a communication facility, and criminal conspiracy.[1]] [H]e was sentenced to an aggregate of 64-200 months' imprisonment. The trial court denied Appellant's post-sentence motion on February 17, 2015. Appellant filed a notice of appeal with the trial court on February 23, 2015, and complied with the trial court's order requiring Appellant to produce a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). The trial court then filed its opinion on April 9, 2015.

[On appeal, Appellant raised the following issues:]

1. Whether the sentence for Count Number 1, Possession with the Intent to Deliver Controlled

---

[1] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S.A. §§ 7512(a) and 903, respectively.

> Substance, merges with sentences for Count Numbers 3 and 4, Delivery of a Controlled Substance.
>
> 2. Whether the trial court abused its discretion by admitting the testimony of Thomas Moore, a so-called "expert witness" in the field of coded language.

*Commonwealth v. Harris*, No. 360 MDA 2015, at 1-4 (Pa.Super. filed 11/6/15) (unpublished memorandum) (footnote added).

After a careful review, this Court found no merit to Appellant's issues, and consequently, this Court affirmed his judgment of sentence. *See id.* Appellant did not file a petition for allowance of appeal to our Supreme Court.

On February 22, 2016, Appellant filed a timely *pro se* PCRA petition,[2] and the PCRA court appointed counsel, who filed an amended PCRA petition on behalf of Appellant on July 6, 2016. The Commonwealth filed an answer to Appellant's amended PCRA petition, and on December 14, 2016, the PCRA court provided Appellant with notice of its intent to dismiss the petition without an evidentiary hearing. PCRA counsel filed a response to the PCRA court's notice, and by order entered on January 3, 2017, the PCRA court

---

[2] Appellant's *pro se* PCRA petition was time-stamped on March 4, 2016; however, the envelope in which Appellant mailed the petition bears a postage stamp of February 22, 2016. Although this discrepancy does not affect our disposition of this case, under the prisoner mailbox rule, we shall deem Appellant's petition to have been filed on February 22, 2016. *See Commonwealth v. Brandon*, 51 A.3d 231, 234 n.5 (Pa.Super. 2012).

dismissed Appellant's PCRA petition. This timely, counseled appeal followed.

The PCRA court directed Appellant to file a Pa.R.A.P. 1925(b) statement,

counsel timely complied, and the PCRA court filed an opinion.

Appellant presents the following issues on appeal:

1. Did the [PCRA] court err in concluding that there was sufficient evidence to support a conviction in all possession with [the] intent to deliver and delivery charges so that [direct appeal counsel] was not ineffective in failing to raise the issue on direct appeal?

2. Did the [PCRA] court err in failing to find [Appellant's] trial counsel ineffective as a result of his failure to object to testimony of Agent [Thomas] Moore that extended beyond his expertise in coded language?

3. Did the [PCRA] court err in concluding that there were hearsay statements that were properly admitted under the co-conspirator exception, and therefore [Appellant's] trial counsel was not ineffective in failing to object to the statements?

4. Did the [PCRA] court err in concluding that, in consideration of the record, no genuine issues of material fact existed?

5. Did the [PCRA] court err and/or abuse [its] discretion in dismissing [Appellant's] PCRA petition without the benefit of a hearing as it relates to [the above stated issues]?

Appellant's Brief at 4.[3]

When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error. Generally, we are bound by a PCRA court's credibility determinations. However, with regard to a court's legal conclusions, we apply a *de novo* standard.

---

[3] We have renumbered Appellant's issues for the ease of discussion.

*Commonwealth v. Johnson*, --- Pa. ---, ---, 139 A.3d 1257, 1272 (2016)

(quotation marks and quotations omitted).

Furthermore,

> In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in Section 9543(a)(2), which includes the ineffective assistance of counsel. 42 Pa.C.S.[A.] § 9543(a)(2)(i).
>
> It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. To prevail on an ineffectiveness claim, the petitioner has the burden to prove that (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. The failure to satisfy any one of the prongs will cause the entire claim to fail.

*Commonwealth v. Benner*, 147 A.3d 915, 919–20 (Pa.Super. 2016)

(quotation marks, quotations, and citations omitted).

> We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the applicable facts and circumstances of the case. Finally, counsel cannot be deemed ineffective for failing to raise a meritless claim.

*Johnson*, --- Pa. at ---, 139 A.3d at 1272 (citations omitted).

In his first argument, Appellant contends that direct appeal counsel was ineffective in failing to raise on direct appeal the issue of whether the evidence was sufficient to sustain his conviction on two counts of delivery of a controlled substance (one on October 31, 2012, and one on November 2,

2012), as well as one count of possession with the intent to deliver a controlled substance (from October 31, 2012, to November 5, 2012). Specifically, he argues the Commonwealth failed to prove that the identity of the substance at issue was, in fact, a controlled substance (heroin).[4]

With regard to Appellant's underlying substantive claim, we note the following:

> Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.
>
> [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

***Commonwealth v. Knox***, --- A.3d ---, 2017 WL 2417826, *1 (Pa.Super. filed 6/5/17) (citations, quotation marks, and quotations omitted).

> It is...well-established in this Commonwealth that the identity of illegal narcotic substances may be established by

---

[4] As Appellant has limited his underlying sufficiency of the evidence claim, we find it unnecessary to set forth or analyze the remaining elements of delivery of a controlled substance or possession with the intent to deliver a controlled substance.

circumstantial evidence alone, without any chemical analysis of the seized contraband. Such a policy indicates that the courts will not, in cases involving the sale or use of illegal drugs, constrict their fact-finding function in regard to the identity of drugs to a strict scientific analysis, but will rather permit the use of common sense and reasonable inferences in the determination of the identity of such substances.

***Commonwealth v. Minott***, 577 A.2d 928, 932 (Pa.Super. 1990) (citations omitted).

Here, in finding no merit to Appellant's underlying sufficiency claim, the PCRA court indicated the following:

> In the case at bar, the totality of the evidence presented at trial sufficiently established [Appellant] possessed heroin with an intent to deliver, delivered heroin on October 31, 2012, and delivered heroin on November 2, 2012. The Commonwealth's evidence at trial consisted of the following: intercepted communications between [Appellant] and co-conspirators Timothy Wilson, Colleen Berrigan, David Immel, Melissa Colby, and Donnee Gordon; intercepted communications between said co-conspirators which discussed [Appellant's] possession and delivery of controlled substances; interpretation of language used in said communications by Agent Moore, who had been qualified and accepted as an expert in coded language and drug deliveries; testimony of surveillance agents; and the testimony of Timothy Wilson and Colleen Berrigan, who were co-conspirators.[5] This evidence, when considered in its entirety, clearly presented sufficient circumstantial evidence from which the Court could conclude [Appellant] engaged in each controlled substance delivery for which he was charged and that

---

[5] Mr. Wilson testified at trial that he travelled with Appellant to make heroin deliveries and the quality of Appellant's heroin was not that good, but it would "get you well[.]" N.T., 10/27/14, at 129. Ms. Berrigan testified at trial that she had a heroin addiction to the point that, without heroin, she would become physically sick. ***Id.*** at 143. She testified that the heroin, which Appellant provided to her, "kept [her] well." ***Id.***

[Appellant] engaged in the possession of a controlled substance with intent to deliver. The calls set up the players, the time, the drug, the quantity, and the price.[6]

\*\*\*

The Commonwealth did not need to produce the actual controlled substances in question at trial, as there was sufficient circumstantial evidence presented to establish the identity of the controlled substance.

---

[6] For instance, Agent Moore testified that he listened to recorded voice mail messages and telephone conversations between Mr. Wilson and Appellant, whose voice he recognized. N.T., 10/27/14, at 32. Specifically, on October 31, 2012, Mr. Wilson called Appellant, asked if he was coming back to the State College area, indicated he had a friend, as well as a couple of other people, looking for heroin and he needed "two stacks." *Id.* at 38, 41. Later on that same day, Appellant told Mr. Wilson he was "right around the corner," and Appellant was then captured on video camera arriving at Mr. Wilson's house. *Id.* at 42. Further, on that same date, Ms. Berrigan sent a text message to Appellant indicating she had people at work who wanted to buy heroin, and Appellant returned later in the day to Mr. Wilson's home. *Id.* at 56. Mr. Wilson then called Ms. Berrigan to report Appellant had brought the heroin, and they negotiated a price. *Id.* Surveillance officers watched as Mr. Wilson and Appellant delivered the heroin to Ms. Berrigan's place of employment. *Id.* at 66. Also, on October 31, 2012, Appellant was overheard on the phone telling Mr. Wilson that he had only "two bunnies" of heroin left. *Id.*

With regard to November 2, 2012, the Commonwealth entered into evidence transcripts of text messages and telephone conversations wherein Mr. Wilson called Appellant, who indicated he would be at Mr. Wilson's house in ten minutes. *See* Commonwealth's Exhibit 1. Mr. Wilson then called Ms. Colby, indicating it would be "no more than twenty a ticket." *Id.* Agent Moore testified that "tickets" referred to heroin. N.T., 10/27/14, at 48.

Further, Agent Moore testified generally about telephone conversations in which Mr. Wilson rated the heroin, which he purchased from Appellant, as a 7.5 or 8 on a scale of 10, and that it was "pretty decent." *Id.* at 70-71. Mr. Wilson informed people on the telephone that the heroin was not "the $10 bags of heroin from his friend down the street." *Id.* at 71.

PCRA Court Opinion, filed 12/14/16, at 3-4 (citations omitted) (footnotes added).

We agree with the PCRA court's analysis and conclude there is no merit to Appellant's underlying sufficiency claim. Specifically, since the trial judge was permitted to use his common sense and the reasonable inferences from the evidence presented in determining that the substance at issue was, in fact, heroin, there is no merit to Appellant's underlying claim that the evidence was insufficient to establish the identity of the substance. *See Minott*, *supra*. Thus, direct appeal counsel cannot be deemed ineffective for failing to raise the meritless claim on direct appeal. *See Benner*, *supra*.

In his next argument, Appellant contends trial counsel was ineffective in failing to object to testimony of Agent Moore that extended beyond his expertise in coded language. We find this issue to be waived on appeal.

Appellant baldly asserts that "[t]rial counsel failed to object to statements by Agent Moore that went beyond the scope of his expertise, with those statements being found at pages 36 through 40, 49, 67, and 91 of the trial transcript." Appellant's Brief at 21. However, Appellant has not identified precisely which statements he is challenging and has cited no authority supporting his one paragraph argument. We decline to develop the argument for Appellant, and thus, we find it to be waived. *See* Pa.R.A.P. 2119; *Coulter v. Ramsden*, 94 A.3d 1080 (Pa.Super. 2014)

(holding this Court will not act as counsel and develop arguments on behalf of an appellant).

In his next argument, Appellant contends trial counsel was ineffective in failing to object to the inadmissible hearsay testimony of Donee Gordon and Melissa Colby.[7] Further, he contends the PCRA court erred in ruling the underlying substantive claim meritless on the basis the testimony was admissible under the co-conspirator exception to the hearsay rule as set forth in Pa.R.E. 803(25)(e), which permits hearsay statements made by a co-conspirator to be admitted against an accused if the statements are made during the conspiracy and in furtherance thereof.

With regard to the underlying substantive claim, we note the following legal precepts:

Our standard of review relative to the admission of evidence is for an abuse of discretion. *Commonwealth v. Cain*, 29 A.3d 3 (Pa.Super. 2011). This Court has previously articulated the requisite standard for admitting a co-conspirator's hearsay statement as follows.

---

[7] We note Appellant has not set forth the specific challenged portions of testimony in his brief; but rather, he indicates that "[c]ounsel for [Appellant] in the amended PCRA [petition] laid out all pages and lines of the transcript where hearsay evidence was admitted with no objection from [trial counsel]." *See* Appellant's Brief at 23. Further, while Appellant makes a passing reference to inadmissible hearsay testimony being offered by David Immel, Appellant has not developed his argument with regard thereto on appeal.

To lay a foundation for the co-conspirator exception to the hearsay rule, the Commonwealth must prove that: (1) a conspiracy existed between the declarant and the person against whom the evidence is offered[8] and (2) the statement sought to be admitted was made during the course of the conspiracy. In addition, there must be evidence other than the statement of the co-conspirator to prove that a conspiracy existed.

*Commonwealth v. Kersten*, 482 A.2d 600, 603 (Pa.Super. 1984) (citation omitted) (footnote added).

Here, Appellant focuses his argument on the first requirement of the exception, *i.e.*, whether there was evidence a conspiracy existed between the declarants (Ms. Gordon and Ms. Colby) and the person against whom the evidence was offered (Appellant).

Application of the co-conspirator exception to the hearsay rule is predicated on agency principles—when the elements of the exception are established, each conspirator is considered an agent of the other, and therefore, a statement by one represents

---

[8] To prove a criminal conspiracy,

[t]he Commonwealth must establish that the [appellant] (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) an overt act done in furtherance of the conspiracy. Circumstantial evidence may provide proof of the conspiracy.

\*\*\*

Additionally, an agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode.

*Commonwealth v. Bricker*, 882 A.2d 1008, 1017 (Pa.Super. 2005) (quotation omitted).

an admission by all....[T]o meet the first requirement of the exception (existence of a conspiracy), the Commonwealth's burden is gauged according to a preponderance [of the evidence] standard, and a conspiracy may be inferentially established, for example, by relation, conduct, or circumstances of the parties.

*Commonwealth v. Johnson*, 576 Pa. 23, 43, 838 A.2d 663, 675 (2003) (citations and footnote omitted). Simply put, only slight evidence of the conspiracy is needed for a co-conspirator's statement to be introduced. *See id.*

Here, in finding the Commonwealth met its burden in this regard, the PCRA court indicated the following:

The content of the intercepted calls presented to the court were wholly either relating to [Appellant's] drug deliveries on their face or were determined to be relating to [Appellant's] drug deliveries through the decoding of the content, by way of the Commonwealth's expert testimony. The parties involved in said calls were either [Appellant's] drug buyers or intermediaries between drug buyers and [Appellant]. At trial, the Commonwealth introduced intercepted text messages and calls, surveillance video, and eyewitness testimony.

PCRA Court Opinion, filed 12/14/16, at 8.

We agree with the PCRA court's analysis in this regard. Further, specifically as to the conspiracy between Appellant and Ms. Gordon, we note that the Commonwealth offered evidence of an intercepted telephone call whereby Ms. Gordon called Mr. Wilson, asking for "a brick of heroin." N.T., 10/27/14, at 66. Agent Moore testified that Mr. Wilson, who covered the telephone with his hand, talked to Appellant, who could be heard in the background indicating that they had only "two bunnies" left. *Id.* Mr. Wilson

- 13 -

communicated this information to Ms. Gordon, who asked for a price. *Id.* at 66-67. Agent Moore testified that Mr. Wilson "again cover[ed] the phone and [came] back with the price of 3½...It [was] going to be two bundles of heroin for $350." *Id.* at 67. Agent Moore also testified to a telephone call that occurred between Mr. Wilson and Appellant after the delivery of the heroin was made to Ms. Gordon. In this conversation, Mr. Wilson informed Appellant that Ms. Gordon had been $100 short when the heroin was delivered, but that she now had the money available. *Id.* at 74.

Furthermore, as to the conspiracy between Appellant and Ms. Colby, the Commonwealth offered evidence that Mr. Wilson telephoned Appellant on November 3, 2012, and Appellant indicated that he was returning to Mr. Wilson's house. *Id.* at 75-76. Surveillance officers then observed Appellant entering Mr. Wilson's house, and Mr. Wilson then telephoned Ms. Colby to inform her that "there is now heroin at [his] house for distribution[.]" *Id.* at 77. Mr. Wilson then made arrangements to meet Ms. Colby at a school to give her the heroin, which Appellant had just delivered to him. *Id.* at 90. Agent Moore testified that a subsequent phone call revealed that Appellant drove Mr. Wilson to the school to deliver the heroin to Ms. Colby. *Id.* at 90-91.

Based on the aforementioned, we agree with the PCRA court that the Commonwealth proved, by a preponderance of the evidence, that a conspiracy existed between the declarants and Appellant. Contrary to

Appellant's assertion, the "division of labor" whereby Mr. Wilson primarily negotiated the purchases with Ms. Gordon and Ms. Colby does not negate Appellant's active participation in the conspiracy to sell drugs, which he supplied. ***See generally Commonwealth v. $6.425.00 Seized from Esquilin***, 583 Pa. 544, 880 A.2d 523, 531 (2005) (observing that "[i]t is not unusual for drug dealing confederates to engage in a division of labor[.]"). Thus, there is no merit to Appellant's underlying evidentiary claim, and, therefore, trial counsel cannot be deemed ineffective for failing to object to the testimony at trial. ***See Benner***, ***supra***.

Appellant's final two issues are intertwined. Specifically, Appellant contends the PCRA court erred in concluding that there was no genuine issue of material fact with regard to his claims presented *supra*, and therefore, the PCRA court erred in dismissing his first PCRA petition without holding an evidentiary hearing.

It is well-settled that "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." ***Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa.Super. 2008) (citation omitted). In the case *sub judice*, Appellant's issues pertained to claims of ineffective assistance of counsel. Since such a claim must meet all three prongs of the test for ineffectiveness, if the PCRA court can determine without an evidentiary hearing that one of the prongs cannot

be met, then no purpose would be advanced by holding an evidentiary hearing. *See id.* Here, as indicated *supra*, Appellant has failed to demonstrate arguable merit to his underlying claims and/or his ineffectiveness claim has been otherwise waived on appeal. Accordingly, we conclude the PCRA court did not err in dismissing Appellant's PCRA petition without an evidentiary hearing.

For all of the foregoing reasons, we affirm.

Affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/27/2017