J-S43013-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: KENNETH COLE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: KENNETH COLE | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1052 EDA 2024 |

Appeal from the Order Entered March 15, 2024
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-MD-0002725-2020

BEFORE: BOWES, J., STABILE, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:               **FILED DECEMBER 9, 2024**

Kenneth Cole appeals from the order granting in part the Commonwealth's petition for forfeiture of currency that was seized from him during an investigation concerning his drug-related criminal charges. We affirm.

On August 14, 2020, members of the Chester County Municipal Drug Task Force, led by Chester County Detective Jonathan Shave, executed a search warrant at Appellant's home at 24 West 5th Avenue, Coatesville, Pennsylvania ("West 5th Avenue property"). There, they searched Appellant's bedroom, which he shared with his wife, Nicole Gantt. On Appellant's side of the room, they found a slew of drug-related paraphernalia and controlled substances, including a Gucci bag containing rock cocaine and a firearm, a scale with residue on it, numerous bags used for packaging drugs, pills of various sorts, and multiple amber pill bottles. Relevant here, officers

discovered and seized the following currency: $4,000 in cash from inside the Gucci bag; $700 from Appellant's wallet; and $616 in cash that was bundled together with EBT cards belonging to other individuals.[1] Additionally, in the kitchen of the home, law enforcement found numerous scales and cooking equipment containing drug residue, as well as what was reported to be an "owe sheet" of debts from clients.

The investigation led the task force later that same day to obtain and execute a search warrant at 214 Andrew Road, Coatesville, Pennsylvania ("Andrew Road property"), which was owned by Appellant's stepfather. Appellant's stepfather indicated that a locked room in the house belonged to Appellant. Officers searched the room, finding multiple scales containing drug residue, more packaging material, several loaded firearms, a plate with powder and a razor, $183 dollars in cash, and a container containing a white, powdery substance. Also in the room were two safes, one of which contained $48,950 in cash, and the other holding $94 in coins. The task force seized the currency encountered during this search. In both residences, the officers also located various sets of keys, which led them to further seize a Lincoln SUV and Harley Davidson motorcycle, both of which they believed were purchased using proceeds from drug transactions.

Finally, on the same day these search warrants were executed, Detective Shave also submitted a warrant to Citadel Credit Union, Appellant's

_____

[1] Of the currency seized, a total of $120 was determined to be bills from a controlled buy.

bank, for information pertaining to Appellant's account. After receiving a response, the detective seized all $8,875.85 from the account.

The Commonwealth charged Appellant at docket number CP-15-CR-2635-2020 with seventeen offenses, including multiple counts of possession with intent to deliver. While the criminal case was pending, the Commonwealth filed at the underlying miscellaneous docket a petition for forfeiture of the currency, SUV, and motorcycle. Decision on the petition was continued until the criminal charges were resolved. Following a jury trial in 2022, Appellant was convicted of four counts each of possession of a controlled substance with intent to deliver and possession of a controlled substance, as well as three counts of persons not to possess a firearm. He was later sentenced to seventeen and one-half to thirty-five years in prison.[2]

Starting on November 6, 2023, the court held a two-day hearing on the Commonwealth's forfeiture petition. At the outset, Appellant and the Commonwealth stipulated to the entry of all exhibits and transcripts from Appellant's criminal case. During the hearing, Detective Shave testified as to the items and currency seized from the residences. Upon the Commonwealth's motion, the court accepted him as an expert relating to controlled substances and controlled substances trafficking. Detective Shave also testified about text messages that were retrieved from Appellant's phone

---

[2] Appellant has appealed his judgment of sentence, which is docketed at 157 EDA 2023.

as part of the investigation, opining that the participants used coded language to conduct drug transactions. Based on the context of the messages, Detective Shave believed that some of the controlled substances were purchased from Appellant with government-issued EBT funds,[3] which is a common practice with drug deals. The detective also reviewed the "owe sheet" and concluded that it demonstrated amounts due and owing to Appellant following drug deals, and was something frequently used by drug dealers.

The Commonwealth additionally introduced testimony from Ethan Beard, a first sergeant with the National Guard who serves on the Pennsylvania Counter Drug Task Force. Sergeant Beard testified that he was trained to maintain and operate ion scanners, which are used to detect the presence of drug and explosive particles on items. Sergeant Beard stated that he performed an ion scan on the $48,950 seized from the safe at the Andrew Road property, which showed cocaine particle levels four to five times higher than that typically found on currency in circulation within Chester County.

Appellant testified at the hearing. He claimed that in the approximately eighteen months preceding his arrest, he derived his income from buying vehicles at auction and reselling them for profit. Appellant offered into evidence a single bill of sale for a Kia that he purchased at auction. He further attested that, for a brief period before then, he earned money through

_____

[3] The EBT card is a debit-style card used to distribute public entitlements.

operation of a pawn shop, but had to close it because, *inter alia*, it was too expensive to operate. On cross-examination, Appellant conceded that he collected unemployment in 2019, the last year during which he filed a tax return before his arrest in 2020.

After the close of testimony, the court took the matter under advisement. On March 14, 2024, it issued an order granting forfeiture as to the $63,338.85 in currency seized, including the coins, but denying the request as to the vehicles.[4] The court also ordered that certain other items seized during the searches be returned to Appellant, namely some jewelry and a birth certificate.

Appellant filed a timely appeal on April 15, 2024.[5] On the same day, the trial court entered an order directing Appellant to submit a statement of errors pursuant to Pa.R.A.P. 1925(b), so that it fell due on or before May 6, 2024. Counsel failed to timely submit a statement and the trial court issued a Rule 1925(a) opinion on May 7, 2024, advocating that the matter be quashed. Approximately a month later, Appellant filed with the trial court a

_____

[4] More particularly, the court found that the Lincoln SUV was titled in the name of Appellant's daughter, who was not served or notified in conjunction with the forfeiture proceedings. Similarly, as to the Harley Davidson, the evidence bore out that it was financed and secured by a loan, again with the respective lender not being notified of the proceedings.

[5] The thirtieth day after entry of the court's order fell on a Saturday. Accordingly, the following Monday, April 15, 2024, was the last day on which Appellant could file a timely notice of appeal. **See** 1 Pa.C.S. § 1908 (providing that the calculation of time periods omits weekends and holidays when the last day of the period is a weekend or holiday).

motion for extension of time in which to file the statement, which the court denied.

Appellant submitted in this Court an application for remand and later his appellate brief. In the application, Appellant again sought an extension of time in which to file his Rule 1925(b) statement, namely because certain transcripts were not yet available, the trial court did not enter an opinion addressing the merits of his anticipated claims, and a remand would avoid a claim of ineffective assistance of counsel. After consideration, we granted relief, remanding for Appellant to file a statement and for the trial court to author a supplemental opinion addressing the issues raised therein. Appellant and the trial court complied with our directives. Thus, this matter is ripe for review.

Appellant presents one substantive issue: "Whether the Commonwealth failed to meet its burden by a preponderance of the evidence that there was a substantial nexus between the $63,338.85 in United States currency that was seized and drug-related criminal activity?"[6] Appellant's brief at 6 (some capitalization altered).

With respect to this claim, Appellant asserts that the Commonwealth failed to meet its burden of proof as to the forfeiture petition. Initially, we

_____

[6] In his brief, Appellant also contends that this matter should be remanded so that the trial court "can engage in a meaningful Rule 1925 analysis and issue a supplemental opinion[.]" Appellant's brief at 6. Since, as discussed above, that was accomplished on remand after Appellant's brief was filed, this issue is moot.

must address the matter of our jurisdiction. We note that "the Commonwealth Court normally has jurisdiction over appeals from forfeiture orders[.]" ***Commonwealth v. Bowers***, 185 A.3d 358, 362 (Pa.Super. 2018). However, "when, as here, a party appeals a forfeiture order to this Court, we have the discretion to transfer the appeal to the Commonwealth Court under Pa.R.A.P. 741(a)." ***Id***. Since neither Appellant nor the Commonwealth has raised any jurisdictional challenge, we opt not to transfer the matter and instead decide it in this Court.

As to our standard of review, "in an appeal from a forfeiture proceeding, the appellate court's review is limited to determining whether the findings of fact made by the trial court are supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law." ***Commonwealth v. $6,425.00 Seized From Esquilin***, 880 A.2d 523, 554 (Pa. 2005).

Forfeiture of assets is governed by 42 Pa.C.S. § 5802, which provides in pertinent part:

> The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:
>
>     . . . .
>
> (6)(i) All of the following:
>
>> (A) Money, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of The Controlled Substance, Drug, Device and Cosmetic Act [("Act")], and all proceeds traceable to such an exchange.

(B) Money, negotiable instruments, securities or other things of value used or intended to be used to facilitate any violation of [t]he . . . Act.

42 Pa.C.S. § 5802. The statute further delineates that "[t]he money . . . found in close proximity to controlled substances possessed in violation of [t]he . . . Act shall be rebuttably presumed to be proceeds derived from the selling of a controlled substance in violation of [t]he . . . Act." 42 Pa.C.S. § 5802(6)(ii).

In general, forfeiture proceedings are initiated through a petition filed by the Commonwealth, as was done here. *See* 42 Pa.C.S. § 5805(a). Our law states the following with respect to the burden of proof, which shifts between the parties:

(1) The burden shall be on the Commonwealth to establish in the forfeiture petition that the property is subject to forfeiture.

(2) If the Commonwealth satisfies the burden under paragraph (1), the burden shall be on the claimant to show by a preponderance of the evidence that:

(i) the claimant is the owner of the property or the holder of a chattel mortgage or contract of conditional sale on the property or holds some other documented interest in the property; and

(ii) the claimant lawfully acquired the property.

(3) If the claimant satisfies the burden under paragraph (2), the burden shall be on the Commonwealth to establish by clear and convincing evidence that the property in question was unlawfully used, possessed or otherwise subject to the forfeiture.

42 Pa.C.S. § 5805(j). Ultimately, this Court has held that to successfully sustain its initial burden, the Commonwealth "must show, by a preponderance

of the evidence, a nexus between the property sought and the possessor's illegal activity." **Bowers**, 185 A.3d at 361 (citation omitted).

In its supplemental Rule 1925(a) opinion, the trial court thoroughly reviewed the evidence supporting its conclusion that the funds were subject to forfeiture. In so doing, it first noted that the author of the opinion was the same judge who presided over both the criminal trial and the forfeiture hearing, and was therefore well-acquainted with the overlapping evidence. **See** Trial Court Opinion, 9/20/24, at 5. The court concluded that, at the hearing, Appellant "failed to present credible evidence to rebut th[e] presumption" that money found near illicit drugs was "derived from the selling of a controlled substance." **Id**. at 7-8.

The court then went on to summarize the substantial evidence and trial exhibits supporting the Commonwealth's petition, including the abundance of drugs and paraphernalia found in the two residences and the status of the various currency seized. **Id**. at 9-13. This also included the testimony from Detective Shave as to the utensils and cooking equipment with cocaine residue on them from the kitchen at the West 5th Avenue property, as well as scales and an owe sheet. **Id**. at 15. Further, the court noted that there were marked bills found among Appellant's items during the search, and text message evidence from his phone suggesting drug activity. **Id**. Additionally, the ion scan showed that the currency from the safe at the Andrew Road property had a substantially higher number of cocaine particles on it than average. **Id**. at 16.

Regarding the funds in Appellant's Citadel bank account, the court determined that the Commonwealth provided a sufficient nexus between the funds and drug transactions. *Id*. at 13-14. It rejected Appellant's assertion that he obtained those amounts through legitimate employment, noting that in 2019, Appellant earned only slightly more than $3,400 in total wages, and that the vast bulk of the deposits into the account were cash. *Id*. at 14. Finally, it specifically concluded that Appellant's testimony as to his income derived from auto auctions and a pawn shop was "entirely not credible." *Id*. This was in large part because he could only produce a single bill of sale for one vehicle, despite claiming that he did auction work for approximately one and one-half years. *Id*.

In his brief, Appellant contends that the fact that there were marked bills found in his room at the West 5th Avenue property is not persuasive as to forfeiture of **all** the funds collected, since it only totaled $120 amidst more than $60,000 ordered forfeited. *See* Appellant's brief at 14. Further, he highlights that none of those marked bills was found at the Andrew Road property, which undermines the rationale for assuming currency found at that address should be subject to forfeiture. *Id*. Appellant also avers, without any significant discussion, that there was no nexus between the $94 in coins and the $183 in cash seized at the Andrew Road property and drug sales. *Id*. at 14-15. He likewise baldly maintains that the $700 in his wallet seized from the West 5th Avenue property and the $8,875.85 in his Citadel bank account were not shown to have a nexus to drug activity. *Id*. at 15. Appellant believes

that his testimony as to his income from the pawn shop and auto auctions was corroborated and argues that he "successfully discharged" his burden of proving that the money was lawfully acquired.[7] *Id*.

Upon review, we cannot conclude that the trial court erred in ordering forfeiture of the seized currency. On the contrary, the certified record fully supports the court's factual findings, discussed above. The court cogently outlined the overwhelming evidence linking the currency seized to violations of the Act, which were separately proven in Appellant's criminal trial. Beyond what the trial court summarized and discussed, we note that the evidence bore out that Appellant admitted to collecting unemployment in 2019, undercutting his claim that cash deposits into his Citadel account were legitimately earned income.

Additionally, excepting the funds in the Citadel account, Appellant does not appear to contest that the funds were located near controlled substances, nor attempt to rebut the presumption that they therefore were drug-related, but rather makes a tenuous and amorphous claim that there was a lack of nexus for some of the particular bills taken. Due to the proximity of the drugs and the currency found in both residences, it became Appellant's burden to

_____

[7] Appellant does not attack Commonwealth's underlying petition, and hence does not contest that it met the initial burden of showing in the petition "that the property is subject to forfeiture." 42 Pa.C.S. § 5805(j)(1). Rather, the appeal concerns whether Appellant met the burden that shifted to him to prove that he obtained the funds in question legally, and if so, whether the Commonwealth yet proved by clear and convincing evidence that the currency was subject to forfeiture.

demonstrate that the currency was not tied to drug transactions, which the court justifiably found he failed to do. The record also reinforces the conclusion that the funds in Appellant's bank account were likely proceeds from drug transactions in light of Appellant's unverifiable income and the relatively high number of cash deposits. In short, the evidence extensively showed that the seized funds were subject to forfeiture. Thus, even if Appellant satisfied his burden of showing by a preponderance of the evidence that he lawfully acquired the funds, the Commonwealth nevertheless established by clear and convincing evidence that they were "unlawfully used, possessed or otherwise subject to the forfeiture." 42 Pa.C.S. § 5805(j)(3). The court was therefore within its rights to grant the Commonwealth's petition.

Based on the above, we hereby affirm the court's order granting forfeiture of the currency seized from the residences and bank account.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/9/2024